**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| DAVID SEIDEMANN, et al., | ) | |
| | ) | CIVIL ACTION NO. 18-cv-09778 |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| PROFESSIONAL STAFF CONGRESS | ) | |
| LOCAL 2334, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**


**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I. The Court should deny the Unions' Rule 12(b)(6) motion under *Goel*. .................................... 2

II. Plaintiffs' claims for prospective relief are not moot. ........................................................... 2

III. The Unions *can* be held liable retroactively for actions taken in reliance on *Abood*
and NY CIV. SERV. LAW § 208. ................................................................................... 3

  A. *Janus* applies retroactively to events occurring before it was decided. ............................ 4

  B. *Janus* renders NY CIV. SERV. LAW § 208 void *ab initio*. ......................................... 6

  C. Under the declaratory theory of law, the Unions' supposed reliance on *Abood*
  does not protect them. ....................................................................................... 7

  D. Wrongfully taken property must always be returned. ..................................................... 8

IV. The Unions are not entitled to a § 1983 good-faith defense. .................................................. 8

  A. The "good faith" defense and qualified immunity ....................................................... 9

  B. There is no good-faith defense for private actors. ...................................................... 10

  C. The Unions cannot assert a good-faith defense. ........................................................ 11

    1. "Good faith" was not a defense to conversion in 1871 so the Unions could
    not assert a good-faith defense here. ................................................................. 11

    2. Any good-faith defense applies only to individuals. .............................................. 15

    3. Any good-faith defense is limited to fulfilling a governmental function. ................... 16

  D. The Unions did not act in good faith. .................................................................... 16

    1. *Janus* anticipates a lack of good faith. ............................................................ 16

    2. Actual evidence shows a lack of good faith. ....................................................... 17

      a. NYSUT knowingly violated *Seidemann* by charging fee payers for
      political advocacy at its 2017 convention. ................................................ 17

      b. AAUPCBC knowingly violated *Hudson* by charging fee payers for
      services directed to union members. ...................................................... 19

      c. AFT knowingly charged for services unrelated to PSC. ............................... 19

  E. A good-faith defense is premature. ....................................................................... 20

V. The Court should deny the Unions' motion concerning Plaintiffs' state-law claims. ............ 21

  A. NY CIV. SERV. LAW § 215 does not preclude Plaintiffs' state-law claims. ....................... 21

    1. NY CIV. SERV. LAW § 215 does not apply to this case. .......................................... 21

    2. If applied here, NY CIV. SERV. LAW § 215 would be unconstitutional. ...................... 21

      a. Section 215 violates procedural due process. ............................................ 21

i

  b.  Section 215 violates substantive due process. .................................................. 23

  c.  Section 215 effectuates an unlawful taking. .................................................. 24

  d.  Section 215 is unconstitutional under NY Const., art. VII, § 6. ..................... 24

B. The Court should not dismiss Plaintiffs' state-law claims as "duplicative." .................... 24

C. The *Martin* rule does not preclude Plaintiffs' state-law claims. ....................................... 27

D. Plaintiffs have stated a valid claim for conversion. ............................................................. 29

E. Plaintiffs have stated a valid claim for unjust enrichment. ................................................. 29

CONCLUSION ................................................................................................................................. 30

221754043.3 95523/338209

# INDEX OF AUTHORITIES

**Cases**

*1133 Taconic, LLC v. Lartrym Servs., Inc.*, 85 A.D.3d 992 (N.Y. App. Div. 2011)................... 29

*Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977)............................................... 3, 8, 20

*Bell v. City of Boise*, 709 F.3d 890 (9th Cir. 2013)................................................. 3

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ......................................................... 23

*Bracken v. Okura*, 869 F.3d 771 (9th Cir. 2017) ................................................... 15

*Bradley v. Roe* 282 N.Y. 525 (1940) ..................................................................... 29

*Brothers v. Florence*, 95 N.Y.2d 290 (N.Y. 2000) ............................................ 22, 23

*Calastri v. Overlock*, 125 A.D.3d 554 (N.Y. App. Div. 2015) ............................... 26

*Calder v. Bull*, 3 US. (3 Dallas) 386 (1798) ......................................................... 23

*Carroll v. Blinken*, 957 F.2d 991 (2d Cir. 1992)............................................... 20, 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................... 2

*Chenango Bridge Co. v. Paige*, 83 N.Y. 178 (N.Y. 1880) ..................................... 30

*Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971) ...................................................... 4

*Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986) ............................... 17, 20

*Chicago, Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226 (1897)...... 24

*Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940) ................ 4

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) ........................ 13

*Colavita v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43 (2006) ................... 29

*Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777 (N.Y. 2012)........................ passim

*Crawford-El v. Britton,* 523 U.S. 574 (1998) ...................................................... 10

*Dascola v. Ann Arbor*, 22 F. Supp. 3d 736 (E.D. Mich. 2014)................................ 6

*E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441 (2018) ............................ 27

*Eastern Enters. v. Apfel*, 524 U.S. 498 (1998)..................................................... 23

*Ex parte Siebold*, 100 U.S. 371 (1880) .................................................................. 6

*Filarsky v. Delia*, 566 U.S. 377 (2012)............................................................ passim

*Franza v. Olin*, 73 A.D.2d 44 (N.Y. App. Div. 2010) ............................................ 22

*Friedrichs v. Cal. Teachers Ass'n*, 135 S. Ct. 2933 (2015) .................................... 16

*Friedrichs v. Cal. Teachers Ass'n*, 136 S. Ct. 1083 (2016) .................................... 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000) .................. 3

*Gibbes v. Zimmerman*, 290 U.S. 326 (1933) ......................................................... 22

*Goel v. Bunge, Ltd.*, 820 F.2d 554 (2d Cir. 2016) .............................................. 2, 28

*Goldstein v. Olympus Optical Co.*, 98 A.D.2d 91 (N.Y. App. Div. 1983) ................. 29

*Gomez v. Toledo*, 446 U.S. 635 (1980)................................................................... 9

*Grahame v. Rochester Teachers Ass'n*, 262 A.D.2d 963 (N.Y. App. Div. 1999) ........ 28

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .......................................... 6, 9, 10, 12

*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993) .................................. 5, 8

*Harris v. Quinn*, 134 S. Ct. 2618 (2014) .............................................................. 16

*Hartford v. Accident & Indem. Co. v. Walston & Co.*, 21 N.Y.2d 219 (N.Y. 1967)...... 12

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000)................... 2

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130
  (S.D. N.Y. 2018)............................................................................................ 25, 26

*Hoffman v. Carow*, 20 Wend. 21 (N.Y. Sup. Ct. 1838)......................................... 12

iii

*Hudson v. Chicago Teachers Union, Local No. 1*, 743 F.2d 1187 (7th Cir. 1984),
   *aff'd*, 475 U.S. 292 (1986) ................................................................................................. 8, 20

*Hughes v. Ester C. Co.*, 330 F. Supp. 3d 862 (E.D. N.Y. 2018) ................................................. 26

*Imbler v. Pachtman*, 424 U.S. 409 (1976) .................................................................................. 9

*James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991) ...................................... 4, 5, 7

*Janus v. AFSCME*, 138 S. Ct. 2448 (2018) ..................................................................... passim

*Jarvis v. Cuomo*, 660 Fed. Appx. 72 (2d Cir. 2016) ...................................................... 13, 14, 15

*Jernigan v. Crane*, 796 F.3d 976 (8th Cir. 2015 .................................................................... 3

*Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277 (2012) ............................. 16

*Komolov v. Segal*, 144 A.D.3d 487 (N.Y. App. Div. 2016) ...................................................... 26

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) .................................................................. 24

*Leder v. Am. Traffic Solutions*, 630 Fed. Appx. 61 (2d Cir. 2015) ......................................... 26

*Leder v. Am. Traffic Solutions*, 81 F. Supp. 3d 211 (E.D. N.Y. 2015) .................................... 26

*Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991) ............................................................ 17

*Lemon v. Kurtzman*, 411 U.S. 192 (1973) ................................................................................. 4

*Leone v. Tricario*, 245 N.Y.S. 81 (N.Y. Sup. Ct. 1930) .......................................................... 22

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ............................................................ 22

*Lopresti v. Boesch*, 126 F.3d 34 (2d Cir. 1997) ...................................................................... 12

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) .................................................................. 8

*Lynch v. United States*, 292 U.S. 571 (1934) .......................................................................... 24

*Madden v. Atkins*, 4 N.Y.2d 283 (N.Y. 1958) .......................................................................... 28

*Manocherian v. Lenox Hill Hosp.*, 229 A.D.2d 197 (N.Y. App. Div. 1997) .............................. 6

*Marbury v. Madison*, 1 Cranch 137 (1803) .............................................................................. 7

*Marini v. Adamo*, 644 Fed. Appx. 33 (2d Cir. 2016) .............................................................. 25

*Martin v. Curran*, 303 N.Y. 276 (1951), ........................................................................... 27, 28

*Missouri P. Ry. Co. v. Nebraska*, 164 U.S. 403 (1896) ........................................................... 23

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ................................................................................ 10

*Morissette v. U.S.*, 342 U.S. 246 (1952) .................................................................................. 12

*Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 ...................................................... 22

*Munn v. Illinois*, 94 U.S. 113 (1876) ....................................................................................... 22

*New York State Nat'l Org. for Women v. Pataki*, 261 F.3d 156 (2d Cir. 2001) ...................... 22

*Norton v. Shelby County*, 118 U.S. 425 (1886) ......................................................................... 6

*Nuss v. Sabad*, Case No. 7:10-CV-279, 2016 WL 4098606 (N.D. N.Y. July 28, 2016) ............ 25

*NYPIRG, Inc. v. Steingut*, 40 N.Y.2d 250 (N.Y. 1976) ............................................................ 30

*Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) ......................................................................... 3

*OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012) .............................................. 13

*Owen v. City of Independence*, 445 U.S. 622 (1980) ............................................................... 15

*Palladino v. CNY Centro, Inc.*, 23 N.Y.3d 140 (2014) ........................................................ 27, 28

*People ex rel. Beck v. Graves*, 280 N.Y. 405 (N.Y. 1939) ....................................................... 30

*Pierson v. Ray*, 386 U.S. 547 (1967) ....................................................................................... 12

*Piniewski v. Panepinto*, 267 A.D.2d 1087 (N.Y. App. Div. 1999) ........................................... 28

*Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996): ............................................................. 7, 13, 14

*Pritchard v. Norton*, 106 U.S. 124 (1882) .............................................................................. 22

*Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503 (S.D. N.Y. 2015) ....................................... 26

*Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995) ....................................................... 5, 6

*Richardson v. U.S.*, 465 F.2d 844 (3d Cir. 1972) ..................................................................... 8

iv

*Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (N.Y. 2008) ........................................................ 25

*Schuyler v. South Mall Constructors*, 32 A.D.2d 454 (N.Y. App. Div. 1969) ............................ 24

*Seidemann v. Bowen*, 584 F.3d 104 (2d Cir. 2009) ................................................... 17, 18, 19, 21

*Spraights v. Hawley*, 39 N.Y. 441 (N.Y. 1868) ......................................................................... 12

*Stewart & Farber v. Bd. of Assessors*, 80 A.D.2d 186 (N.Y. App. Div. 1981) .......................... 22

*Town of Islip v. Paliotti*, 196 A.D.2d 648 (N.Y. App. Div. 1993) ............................................... 6

*U.S. Dep't of the Treasury v. Galioto*, 477 U.S. 556 (1986) ........................................................ 3

*United States v. Lewis*, 478 F.2d 835 (5th Cir. 1973) ................................................................. 8

*United States v. Rayburn House Office Bldg. Rm. 2113*, 497 F.3d 654 (D.C. Cir. 2007) ............. 8

*United States v. Venneri*, 782 F. Supp. 1091 (D. Md. 1991) ....................................................... 8

*Webster v. Doe*, 486 U.S. 592 (1988) ......................................................................................... 22

*Wilkinson v. Leland*, 27 U.S. (2 Peters) 627 (1829) .................................................................. 23

*Wyatt v. Cole*, 504 U.S. 161 (1992) .............................................................................. 6, 8, 9, 10

*Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993) ......................................................................... 12

**Statutes**

42 U.S.C. § 1983 ......................................................................................................................... 1, 9

NY CIV. SERV. LAW § 208 ...................................................................................................... passim

NY CIV. SERV. LAW § 215 .......................................................................................... 1, 21, 23, 24

**Other Authorities**

REST. (2D) OF TORTS § 244 ................................................................................... 12, 13, 28, 29

**Rules**

Fed.R.Civ.P. 12(d) .......................................................................................................................... 2

**Treatises**

Cooley, A Treatise on the Law of Torts (1880) ...................................................................... 11, 12

**Constitutional Provisions**

N.Y. Const., art. I, § 7 .................................................................................................................. 24

NY Const., art. VII, § 6 .......................................................................................................... 21, 24

221754043.3 95523/338209

# INTRODUCTION

On June 27, 2018, the United States Supreme Court decided *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), holding that a compulsory agency fee violates the free speech rights of public employees who elect not to join a public-sector union and who do not affirmatively consent to pay such a fee. Plaintiffs have sued Defendant Unions under 42 U.S.C. § 1983 and under New York law for conversion and unjust enrichment. Plaintiffs seek a declaration that the agency-fee requirement applicable to Plaintiffs is unconstitutional; they also seek to recover from the Unions the agency fees illegally taken from Plaintiffs' wages.

The Unions have moved to dismiss and advance four arguments. Each lacks merit:

1. *Plaintiffs' request for prospective relief is moot.* Not true. There is nothing moot about Plaintiffs' request for judgment declaring that (1) it is unconstitutional to collect agency fees from Plaintiffs; and (2) NY Civ. Serv. Law § 208 is unconstitutional and unenforceable.

2. *The Unions cannot be held liable retroactively for actions taken in reliance on Supreme Court precedent and § 208.* Wrong. *Janus* applies retroactively and renders § 208 void *ab initio*. Under the Supreme Court's declaratory theory of law, the prior case law was never valid. And the Unions cannot rely on an unconstitutional statute as the basis of a defense.

3. *The Unions have a good-faith defense to § 1983 liability.* Not so. There is no "good faith" defense for private actors, nor for a claim analogous to conversion. Moreover, the Unions acted in *bad* faith by assessing more fees than had been allowed under Supreme Court and Second Circuit cases. Plus, they continued imposing compulsory agency fees after being "on notice *for years* regarding" the Supreme Court's concern about such fees' constitutionality.[1]

4. *Plaintiffs' state-law claims fail.* Again, no. NY Civ. Serv. Law § 215 does not apply in this case because § 208 is void *ab initio*; anyway, application of § 215 to Plaintiffs'

---

[1] *Janus*, 138 S. Ct. at 2844 (emphasis added).

221754043.3 95523/338209

claims would be unconstitutional under the U.S. and New York constitutions. Further, the state-law claims should not be dismissed as "duplicative" or under the *Martin* rule.

## ARGUMENT

### I. The Court should deny the Unions' Rule 12(b)(6) motion under *Goel*.

Under *Goel v. Bunge, Ltd.*, 820 F.2d 554 (2d Cir. 2016), "a court adjudicating [a Rule 12(b)(6)] motion may review only a narrow universe of materials."[2] Declarations are outside this universe,[3] yet the Unions have attached numerous declarations and documents. Even if attaching the documents was permissible under *Goel*, attaching declarations was not. Thus, the Court should deny the Unions' motion.

Alternatively, "[i]f the court wishes to take account of such materials, … the Rules oblige it to 'treat[ ] [the motion] as one for summary judgment under Rule 56; and give all parties 'a reasonable opportunity to present all the material that is pertinent to the motion.'"[4] In the latter situation, the Court should deny the motion so that Plaintiffs can engage in discovery.[5]

### II. Plaintiffs' claims for prospective relief are not moot.

If Plaintiffs sought only to enjoin the Unions from collecting agency fees, the Unions' mootness argument would be stronger. But the Unions' (and the state's and public employers') assurances that they will not collect agency fees do not moot Plaintiffs' request that the Court to declare that (1) it is unconstitutional to collect agency fees from Plaintiffs and (2) NY Civ. Serv. Law § 208 is unconstitutional and unenforceable. Neither the Unions nor the state has declared *anything* unconstitutional; they have only said that they will not collect agency fees. And it is a

---

[2]  *Goel v. Bunge, Ltd.*, 820 F.2d 554, 559 (2d Cir. 2016).
[3]  *See id.*
[4]  *Id.* at 560 (quoting Fed.R.Civ.P. 12(d)).
[5]  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).

221754043.3 95523/338209

judicial function to declare § 208 and the collection of agency fees unconstitutional.[6]  While

*Janus* inevitably means that § 208 will be declared unconstitutional, *Janus* did not address § 208;

Plaintiffs need this Court to make that declaration.[7]  Further, in a similar case, Defendant NEA

denied an allegation that, under *Janus*, the California agency-fee statute is unconstitutional.

Thus, while the Unions are saying they will not collect agency fees going forward, Defendant

NEA, at least, will apparently deny that § 208 is unconstitutional, if it answers the way it did in

the similar case.[8]  Finally, the New York legislature's failure to repeal § 208 also supports

Plaintiffs' claim for injunctive relief.[9]

### III.    The Unions *can* be held liable retroactively for actions taken in reliance on *Abood* and NY CIV. SERV. LAW § 208.

The Unions wrongly assert that the Court cannot hold them liable for relying on NY CIV.

SERV. LAW § 208 prior to *Janus*.  In fact, *Janus* applies retroactively, and results in NY CIV.

SERV. LAW § 208 being void *ab initio*.  Further, the Unions' supposed reliance on *Abood* does

not protect them from liability.  *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977).   Besides,

wrongfully taken property must always be returned, even if taken in reliance on a statute.

---

[6]    *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (holding that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice").

[7]    *See Bell v. City of Boise*, 709 F.3d 890, 893-895 (9th Cir. 2013) (holding that special order that ordinance will not be enforced does not moot case challenging the constitutionality of the ordinance because the special order could not repeal the ordinance); *Jernigan v. Crane*, 796 F.3d 976, 979 (8th Cir. 2015) (holding that the plaintiffs' constitutional challenge to Arkansas's marriage laws did not become moot after *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), because *Obergefell* "invalidated laws in Michigan, Kentucky, Ohio, and Tennessee – not Arkansas.").

[8]    *See* Case No. 2:19-cv-292 (E.D. Cal.), Dkt. 17 (Am. Compl.) ¶ 18 ("*** As a result, 'public-sector agency-shop arrangements' like those here 'violate the First Amendment.'"), and Dkt. 24 (NEA's Ans.) ¶ 18 ("*** To the extent a response is required, the Teacher Union Defendants deny the allegations in Paragraph 18.").

[9]    *See U.S. Dep't of the Treasury v. Galioto*, 477 U.S. 556 (1986) (holding that a case becomes moot if Congress amends the statute to remove the challenged provision).

221754043.3 95523/338209

**A.** *Janus* **applies retroactively to events occurring before it was decided.**

The Unions suggest that *Janus* does not apply retroactively to events that took place *before* the case was decided on June 27, 2018. This issue raises the question whether it was unconstitutional for the Unions to collect agency fees before June 27, 2018. Giving *Janus* retroactive effect is required under a trio of Supreme Court cases.

In *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991), Justice Souter's described the three options concerning whether a Supreme Court decision applies retroactively:

- "First, a decision may be made **fully retroactive**, applying both to the parties before the court and to all others by and against whom claims may be pressed, consistent with res judicata and procedural barriers such as statutes of limitations."[10] "This practice is overwhelmingly the norm[.]"[11] *Id.* Retroactivity applies even to cases not yet filed when the decision is rendered.[12]

- "Second, there is the **purely prospective** method of overruling, under which a new rule is applied neither to the parties in the lawmaking decisions nor to those others against or by whom it might be applied to conduct or events occurring before that decision."[13] Examples of this approach include *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940), and *Lemon v. Kurtzman*, 411 U.S. 192 (1973).[14]

- "Finally, a court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the

---

[10] *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 535 (1991) (op. of Souter, J.) (emphasis added).
[11] *Id.*
[12] *Id.* at 542-543.
[13] *Id.* at 535 (emphasis added).
[14] *See id.* at 536.

4

pronouncement."[15]  Justice Souter referred to this method as **modified, or selective, prospectivity**.[16]

The Court held that modified, or selective, prospectivity was unconstitutional because it treated similarly-situated persons unequally.[17]  Justice Scalia's concurrence opined that pure prospectivity was also unconstitutional, though a majority neither endorsed nor rejected his position.[18]  Writing for himself and Justices Blackmun and Marshall, Justice Scalia opined that the declaratory theory of law compelled full retroactive application of a new decision.[19]

The Supreme Court addressed retroactivity again two years later in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993).  *Harper* holds:  "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."[20]  The concurring and dissenting opinions make clear that the rule applies even if the new decision "overrul[es] clear past precedent on which litigants may have relied" or "decid[es] an issue of first impression whose resolution was not clearly foreshadowed."[21]

Finally, *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995), holds that, even though a court has "a degree of legal leeway in fashioning remedies for constitutional ills," a court may *not* refuse to apply a prior decision retroactively.[22]  The Court held that there are few exceptions to *Harper*'s rule of retroactivity, only one of which is even remotely relevant to this case:

---

15    *Id.* at 537.
16    *Id.*
17    *Id.* at 543; *id.* at 548 (Scalia, J., concurring).
18    *See id.* at 549 (Scalia, J., concurring).
19    See Argument III.C for discussion about the declaratory theory of law.
20    *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993).
21    *Id.* at 110-111 (Kennedy, J., concurring); *id.* at 123 (O'Connor, J., dissenting).
22    *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752-754 (1995).

5

qualified immunity, which "reflects *both* reliance interests and other significant policy justifications" and "permits government officials to rely upon old law."[23]  Qualified immunity "does so lest threat of liability 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'"[24]  "And, it reflects the concern that 'society as a whole,' without that immunity, would have to bear 'the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office.'"[25]  Of course, these "policy justifications" apply only to government officials carrying out governmental functions, not to a private party claiming a good-faith defense, as is the case here,[26] so this exception does protect the Unions here.

Thus, under this trio of cases, *Janus* applies retroactively "to all events" predating the decision, including the Unions' collecting of agency fees from Plaintiffs before June 27, 2018.

**B.     *Janus* renders NY CIV. SERV. LAW § 208 void *ab initio*.**

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; *it affords no protection*; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."[27]  In *Reynoldsville Casket*, Justice Scalia opined that "what a court does with regard to an unconstitutional law is simply to *ignore* it."[28]  "[A] law repugnant to the Constitution 'is void, and is as no law.'"[29]  "Thus, if a plaintiff seeks the return of money taken by the government in reliance on an unconstitutional tax law, the court ignores the tax law, finds

---

[23]   *Id.* at 757-758.

[24]   *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)).

[25]   *Id.* at 758 (quoting *Harlow*, 457 U.S. at 814).

[26]   *See Wyatt v. Cole*, 504 U.S. 161, 167 (1992) (rejecting qualified immunity for private actors because "the reasons for recognizing such an immunity were based not simply on the existence of a good faith defense at common law, but on the special policy concerns involved in suing government officials.").

[27]   *Norton v. Shelby County*, 118 U.S. 425, 442 (1886) (emphasis added).  *Accord, e.g.*, *Dascola v. Ann Arbor*, 22 F. Supp. 3d 736, 743 & n.4 (E.D. Mich. 2014) and cases cited therein.  *See also Town of Islip v. Paliotti*, 196 A.D.2d 648, 649 (N.Y. App. Div. 1993); *Manocherian v. Lenox Hill Hosp.*, 229 A.D.2d 197, 205 (N.Y. App. Div. 1997).

[28]   *Reynoldsville Casket*, 514 U.S. at 760 (Scalia, J., concurring).

[29]   *Id.* (quoting *Ex parte Siebold*, 100 U.S. 371, 376 (1880)).

6

the taking of the property therefore wrongful, *and provides a remedy*."[30]  This rule applies

equally to the Unions' taking of Plaintiffs' money.

> ### C.  Under the declaratory theory of law, the Unions' supposed reliance on *Abood* does not protect them.

In *James B. Beam*, Justice Souter opined that full retroactivity "reflects the declaratory

theory of law, according to which the courts are understood only to find the law, not to make

it."[31]  Justice Scalia explained this theory in his concurring opinion.  Justice Scalia opined that

the Court has "the power 'to say what the law is,' not the power to change it."[32]  Judges "make"

law but only "*as judges make it*, which is to say *as though* they were 'finding' it—discerning

what the law *is*, rather than decreeing what it is today *changed to*, or what it will *tomorrow be*."[33]

The declaratory theory of law applies here.  Per *Janus*, the Constitution does not allow –

and *never* did allow – New York to force a public-sector employee to pay agency fees.  *Such fees*

*were always invalid.*  And, because *Abood* was mistaken in its construction of the Constitution, it

is as though *Abood* never existed.  Thus, NY CIV. SERV. LAW § 208 did not *become* invalid on

June 27, 2018; rather, it was *never* valid.

The Unions quote *Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996):  "Every statute should

be considered valid until there is a determination to the contrary."[34]  Even if § 208 were

*considered* valid until being declared unconstitutional, that does not address the relevant question

of whether § 208 was *in fact* valid and thus could be used as the basis for the Unions' defense to

liability.  Under the declaratory theory, the answer is no.  Thus, in *Richardson v. U.S.*, the Third

Circuit held that a party cannot base its defense on an unconstitutional statute – "Such a defense

---

[30]   *Id.* (emphasis added).
[31]   *James B. Beam*, 501 U.S. at 535-536 (Op. of Souter, J.) (citation omitted).
[32]   *Id.* (Scalia, J., concurring) (citing *Marbury v. Madison*, 1 Cranch 137, 177 (1803)).
[33]   *Id.*
[34]   *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996).

7

would have the effect of sustaining the very statute which the court is asked to strike as unconstitutional."[35] Yet this is precisely the Unions' defense here.

The Unions relied on an unconstitutional statute to take from Plaintiffs that which rightly belonged to Plaintiffs. Now that the statute's unconstitutionality is clear, why should the wrongdoers (albeit mistakenly believing they were acting with justification) keep the money rather than return it to its rightful owners? Not only does the law reject the Unions' argument, so does equity. As between a wrongdoer and an innocent, rightful owner – a victim of the wrongdoing – there can be no real dispute what justice requires.

### D. Wrongfully taken property must always be returned.

Wrongfully taken property must always be returned when the statute relied on for taking the property is later declared unconstitutional.[36] In *United States v. Venneri*, 782 F. Supp. 1091 (D. Md. 1991), a putative crime "victim" was required to return restitution to the criminal defendant whose conviction was based on a statute later declared unconstitutional.[37] So too here.

## IV. The Unions are not entitled to a § 1983 good-faith defense.

Liability under § 1983 is not limited to government actors; private actors are deemed to act under color of state law in certain circumstances.[38] Notably, both the Supreme Court and the Seventh Circuit have held that unions are state actors in the context of a claim challenging the constitutionality of agency fees.[39] But, unlike government actors, who may be protected by qualified immunity, qualified immunity does not protect private actors, except in very limited

---

[35] *Richardson v. U.S.*, 465 F.2d 844, 850 (3d Cir. 1972) (*en banc*), *rev'd on other grds.*, 418 U.S. 166 (1974).

[36] *See, e.g., Harper*, 509 U.S. at 98-99 (taxes collected under unconstitutional statute); *Wyatt v. Cole*, 994 F.2d 1113, 1115 (5th Cir. 1993) (property seized under unconstitutional replevin statute); *United States v. Lewis*, 478 F.2d 835, 846 (5th Cir. 1973) (criminal fines paid under an unconstitutional statute); *United States v. Rayburn House Office Bldg. Rm. 2113*, 497 F.3d 654, 656, 665 (D.C. Cir. 2007) (property seized in good-faith reliance on a search warrant later declared unconstitutional).

[37] *United States v. Venneri*, 782 F. Supp. 1091, 1092 (D. Md. 1991).

[38] *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

[39] *See Abood v. Detroit Bd. of Ed.*, 431 U.S. 207, 226 (1977); *Hudson v. Chicago Teachers Union, Local No. 1*, 743 F.2d 1187, 1197 (7th Cir. 1984) (Posner, J.), *aff'd*, 475 U.S. 292 (1986).

8

circumstances discussed below.[40]  That reality bars the Unions' good-faith defense.  Of course, a

defense is not an appropriate basis for a Rule 12 motion in any event.[41]

### A.    The "good faith" defense and qualified immunity

"Section 1983 'creates a species of tort liability that on its face admits of no

immunities.'"[42]  Nevertheless, the Supreme Court held that, "[i]f parties seeking immunity were

shielded from tort liability when Congress enacted the Civil Rights Act of 1871 – § 1 of which is

codified at 42 U.S.C. § 1983 – we infer from legislative silence that Congress did not intend to

abrogate such immunities when it imposed liability for actions taken under color of state law."[43]

"In determining whether there was immunity at common law that Congress intended to

incorporate in the Civil Rights Act, we look to the most closely analogous torts[.]"[44]  The inquiry

turned on whether "good faith" was a defense to that tort in 1871.[45]

Whether called the good-faith defense, good-faith immunity, or quality immunity, the

defense had certain limitations:  It required a subjective good-faith belief that the defendant was

acting lawfully; and, because "good faith" is subjective, it could not be resolved prior to

discovery and often not until trial.  Unhappy with these limitations, the Supreme Court in

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982), made "an adjustment" to the good-faith defense for

government actors,[46] jettisoning the subjective good-faith component so "qualified immunity"

was a purely objective standard.[47]  Thus, even a defendant acting in subjective bad faith is

---

[40]    *See Wyatt v. Cole*, 504 U.S. 161, 167-168 (1992); *Filarsky v. Delia*, 566 U.S. 377, 393-394 (2012).
[41]    *Gomez v. Toledo*, 446 U.S. 635, 641 (1980).
[42]    *Wyatt*, 504 U.S. at 163 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)).
[43]    *Id.* at 164.
[44]    *Id.*
[45]    *Id.*
[46]    *Harlow v. Fitzgerald*, 457 U.S. 800, 814-815 (1982).  *See Wyatt*, 504 U.S. at 166 (holding that *Harlow* "completely reformulated qualified immunity along principles not at all embodied in the common law").
[47]    *Harlow*, 457 U.S. at 818.

9

entitled to qualified immunity if the conduct was *objectively* reasonable.[48]  In addition, "*Harlow*

established an '*immunity from suit* rather than a mere defense to liability[.]'"[49]  Since *Harlow*,

qualified immunity has been determined at a case's outset to avoid "subject[ing] government

officials either to the costs of trial or to the burdens of broad-reaching discovery[.]"[50]

After *Harlow*, qualified immunity is no longer tied to the historical good-faith defense,

but instead is an independent defense grounded "on the special policy concerns involved in suing

government officials."[51]  *But, if a good-faith defense for private actors exists at all, it remains*

*rooted in the historical good-faith doctrine, with all the attending limitations.*  Specifically, to

the extent a good-faith defense exists for private actors, that defense turns on whether good faith

provided a defense to the most analogous in 1871, and it is a subjective inquiry about whether

the defendant actually acted in good faith such that discovery is necessary.

### B.    There is no good-faith defense for private actors.

In *Wyatt v. Cole*, 504 U.S. 161 (1992), the Supreme Court left open the possibility that a

private party might be able to assert a "good faith" defense to a § 1983 claim, but the Supreme

Court has never decided this issue.  *Filarsky v. Delia*, 566 U.S. 377 (2012), undercuts the need

for a good-faith defense.[52]

In *Filarsky*, the Supreme Court, for the first time, granted qualified immunity to a private

actor, but only to one engaged in a governmental function.  The Court considered whether a

private attorney hired to act as the government's prosecutor in a particular case was immune

---

48    *Crawford-El v. Britton,* 523 U.S. 574, 588 (1998)  ("[A] defense of qualified immunity may not be rebutted by
      evidence that the defendant's conduct was malicious or otherwise improperly motivated.  Evidence concerning
      the defendant's subjective intent is simply irrelevant to that defense.").
49    *Wyatt*, 504 U.S. at 166 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).
50    *Harlow*, 457 U.S. at 817-818.
51    *Wyatt*, 504 U.S. at 167.
52    *See Filarsky*, 566 U.S. at 393-394.

221754043.3 95523/338209

from liability in 1871.[53]  It turned out that private citizens (such as Abraham Lincoln) regularly handled criminal prosecutions on behalf of the government, and the law gave the same protection to those private citizens as it gave to public employees performing the same function.[54]  So too today.[55]  The Court held that the rationale supporting protection for government employees – ensuring the government can find qualified applicants willing to work for the government – applied equally to a private person hired as a subcontractor to perform a governmental function. But "individuals who had no connection to the government and pursued purely private ends" are not so protected.[56]  Because *Filarsky* holds that a private actor is entitled to qualified immunity in some circumstances, the entire justification for a good-faith defense is negated.  Thus, the Unions get either qualified immunity or nothing.[57]

C.    **The Unions cannot assert a good-faith defense.**

The Unions would also not be able to assert a good-faith defense.

1.    **"Good faith" was not a defense to conversion in 1871 so the Unions could not assert a good-faith defense here.**

In *Wyatt*, the plaintiff challenged the constitutionality of a replevin statute so the most analogous torts to the plaintiff's § 1983 claims were malicious prosecution and abuse of process.[58]  Good faith *was* a defense to those claims when the Civil Rights Act was adopted in 1871.[59]  The Fifth Circuit's opinion on remand recognized this, noting the unique elements of malicious prosecution and abuse of process, which require "proof that defendants acted with

---

[53]    *Id.* at 384.
[54]    *Id.* at 385-387.
[55]    *Id.* at 393-394.
[56]    *Id.* at 392.
[57]    And here the Unions get nothing.  *Cf. Hudson*, 743 F.2d at 1197 (holding that a union in an agency-fee case was not entitled to good-faith immunity).  *See also* Argument IV.C.3.
[58]    *Wyatt*, 504 U.S. at 164.
[59]    *See* Cooley, A Treatise on the Law of Torts (1880) ("Cooley on Torts") at 180 ("It is the lawful right of every man, who believes he has a just demand against another, to institute a suit and endeavor to obtain the proper redress.").

221754043.3 95523/338209

malice *and* without probable cause."[60]  Because good faith provided a defense at common law to claims for malicious prosecution and abuse of process, the Fifth Circuit held that good faith provided a defense to the § 1983 claim for collateral harms resulting from the seizure, but not for property seized under the statute.[61]  And, in *Pierson v. Ray*, the Supreme Court held that good faith was a defense to a § 1983 most analogous to false arrest since good faith was a defense to false arrest at common law.[62]  *Pierson* was decided before *Harlow* eliminated the good-faith component in the qualified-immunity defense so it illustrates how the subjective good-faith defense must be applied, including whether good faith was a defense to the most analogous tort in 1871.

Here, the most analogous tort is conversion.  Good faith is not a defense to conversion.[63]  Even a mistaken belief about the converted property's rightful owner, whether it is a mistake of law or fact, does not provide any defense.[64]  Construing New York law, the Second Circuit holds:  "Wrongful intent simply is not an element of an otherwise valid conversion claim."[65]  More important, good faith was not a defense to conversion in 1871.[66]  Thus, even if a good-faith defense remains viable, it does not apply to Plaintiffs' § 1983 claim.[67]

---

[60]   *Wyatt v. Cole*, 994 F.2d 1113, 1119 (5ᵗʰ Cir. 1993).

[61]   *Id.* at 1115 and 1120.

[62]   *Pierson v. Ray*, 386 U.S. 547, 557 (1967) ("We hold that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983.").

[63]   *Hoffman v. Carow*, 20 Wend. 21, 21 (N.Y. Sup. Ct. 1838); *Hartford v. Accident & Indem. Co. v. Walston & Co.*, 21 N.Y.2d 219, 221 (N.Y. 1967).

[64]   REST. (2D) OF TORTS § 244 ("An actor is not relieved of liability to another … for conversion by his belief, because of a mistake of law or fact not induced by the other, that he … is entitled to its immediate possession[.]"); *Morissette v. U.S.*, 342 U.S. 246, 253-254 (1952) ("In the civil tort [of conversion], except for recovery of exemplary damages, the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant.  If one takes property which turns out to belong to another, his innocent intent will not shield him from making restitution or indemnity[.]").

[65]   *Lopresti v. Boesch*, 126 F.3d 34, 42 (2d Cir. 1997).

[66]   *Hoffman*, 20 Wend. at 21.  *See also* Cooley on Torts, at 451-452 ("So it is no protection to one who has received property and disposed of it in the usual course of trade, that he did so in good faith, and in the belief that the person from whom he took it was owner, if in fact the possession of the latter was tortious.").  *See also Spraights v. Hawley*, 39 N.Y. 441, 447 (N.Y. 1868) ("[T]he agent, in a tortious conversion of another's

The Unions assert that the most analogous tort is abuse of process but the common-law tort of abuse of process does not fit this case at all.  Abuse of process exists when a lawsuit is commenced with justification but is thereafter prosecuted for a purpose other than that intended by the law.[68]  Here, there was no lawsuit that was being improperly prosecuted.  Instead, *Janus* describes the relevant facts in terms smacking of conversion:  "It is hard to estimate how many billions of dollars have been taken from nonmembers and transferred to public-sector unions in violation of the First Amendment."[69]

Further, the Unions implicitly admit that conversion is the most analogous tort to Plaintiffs' § 1983 claim.  On page 22 of their memorandum, the Unions state:  "The crux of Plaintiffs' conversion claim is the same as its [sic] § 1983 claim – Defendants [sic] collection of agency fees constituted an unlawful infringement on Plaintiffs' First Amendment rights."  Their argument on page 22 is that the "allegations supporting conversion … are … the same as those underlying" the § 1983 claim.

The Unions' reliance on *Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996), and *Jarvis v. Cuomo*, 660 Fed. Appx. 72 (2d Cir. 2016), is misplaced.  In *Pinsky*, the court held that a good-faith defense was available to a private actor sued under § 1983 but *Pinsky* is easily distinguished.  In that case, there was a lawsuit in a Connecticut state court in which the state-court plaintiff attached the state-court defendant's real property under Connecticut's prejudgment attachment statute.  The state-court defendant subsequently sued the state-court plaintiff under

---

property, is liable when his principal is guilty of the tort; and even though the agent acted innocently in good faith, relying on the possession and apparent authority … of his principal.").

[67]  Alternatively, "free speech violations to not require specific intent."  *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1073-1075 (9th Cir. 2012).  This is unlike other types of constitutional deprivations, such as Eighth Amendment or Equal Protection claims.  *Id.* at 1074.  Because state-of-mind is legally irrelevant for a free-speech case, so is the good-faith defense.

[68]  REST. (2D) OF TORTS § 682.

[69]  *Janus*, 138 S. Ct. at 2486.

§ 1983 asserting that the attachment was unconstitutional.[70] Assuming that a good-faith defense applies to a private defendant under § 1983, the court in *Pinsky* utilized the correct framework to resolve the issue. Specifically, the court underwent the historical analysis required under *Wyatt* (and, more recently, *Filarsky*). That is, the court determined that the most analogous tort to Pinsky's § 1983 claim was malicious prosecution, based on the facts of the case – the allegedly wrongly use of a prejudgment attachment statute in a separate case.[71] Believing that good faith was a defense to malicious prosecution, the court then held that the defendant could assert a good-faith defense.[72] (Notably, the court did not order the dismissal of the case but instead remanded so that evidence could be adduced related to good faith.[73]) Plaintiffs do not take significant issues with *Pinsky* since the court engage in the correct analytical process. Nevertheless, because the most analogous tort in that case was malicious prosecution – a tort for which good faith provided a defense at common law – it is inapposite in this case.

*Jarvis* is another matter altogether. While factually similar to this case, *Jarvis* did not consider the most analogous tort or whether good faith was a defense to that tort in 1871. Instead, the court simply observed that circuit courts – including the Second Circuit in *Pinsky* – had recognized the existence of a good-faith defense, but failed to recognize that *Pinsky* did so based on the particularities of a common-law malicious-prosecution claim.[74] *Jarvis* ultimately held that, "[b]ecause it was objectively reasonable for [the union] 'to act on the basis of a statute not yet held invalid,' defendants are not liable for damages stemming from the pre-*Harris*

---

[70] *Pinsky*, 79 F.3d at 308.
[71] *Id.* at 312. The court concluded that malicious prosecution was more analogous than abuse of process. Notably, malicious prosecution and abuse of process both derive from a prior lawsuit.
[72] *Id.* at 313.
[73] *Id.*
[74] *Jarvis*, 660 Fed. Appx. at 75-76.

14

collection of fair share fees."[75]  This is qualified immunity analysis, not analysis of a subjective

good-faith defense.  Plus, it flies in the face of the analysis set forth in Argument III.

### 2. Any good-faith defense applies only to individuals.

The historical good-faith defense, as well as the reformulated doctrine of qualified

immunity, protects only individual defendants, not their employers.[76]  The intention was to give

officials a measure of personal protection so as to induce qualified applicants to become public

servants.[77]  Thus, the Court's historical survey of immunity cases in *Owen v. City of*

*Independence*, 445 U.S. 622 (1980), noted that only individuals were granted immunity.[78]  On

this basis, the Court held that a municipality cannot assert good-faith qualified immunity as a

defense.[79]

If an employee's government employer is not protected, then certainly a private entity

like the Unions is not protected.  *Owen*'s reasoning supports this conclusion.  There the Court

held: "[I]t is clear that at the time § 1983 was enacted, local government bodies did not enjoy …

'good-faith' qualified immunity[.]"[80]  Instead, the Court continued, "a municipality's tort

liability in damages was identical to that of private corporations[.]"[81]  Thus, the common law in

1871 did not provide a good-faith defense (or any other immunity) to a private entity.  As a

result, the Unions' argument is historically unsupportable and necessarily fails.

---

[75]  *Id.* at 76.

[76]  *See Filarsky*, 566 U.S. at 383.

[77]  *Id.* at 390, 393; *Owen v. City of Independence*, 445 U.S. 622, 653 (1980); *Bracken v. Okura*, 869 F.3d 771, 776 (9th Cir. 2017).

[78]  *See Owen*, 445 U.S. at 637-638.

[79]  *Id.* at 638 ("[T]here is no tradition of immunity for municipal corporations, and neither history nor policy supports a construction of § 1983 that would justify the qualified immunity accorded" the municipality.).

[80]  *Id.*

[81]  *Id.*

15

### 3. Any good-faith defense is limited to fulfilling a governmental function.

In line with *Filarsky*, any good-faith defense that exists should be limited to actions fulfilling a governmental function. Here, the Unions were not performing a governmental function when they received and kept Plaintiffs' money. They were "pursu[ing] private ends" – taking money for Union business.[82] And, to the extent the Unions argue that their acceptance of agency fees was for a governmental objective ("labor peace"), Janus firmly rejected that argument.[83] Besides, the Unions are contractually opposed to the government through collective bargaining agreements. So the Unions cannot invoke the protection of either qualified immunity or the good-faith defense.

### D. The Unions did not act in good faith.

### 1. *Janus* anticipates a lack of good faith.

The Unions did not act with subjective good faith. As the Supreme Court explained in *Janus*, "public-sector unions have been on notice *for years* regarding this Court's misgivings about *Abood* [*v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977)]."[84] "During this period of time, any public-sector union seeking an agency-fee provision in a collective bargaining agreement must have understood that the constitutionality of such a provision was uncertain."[85] Further, the Unions apparently anticipated the *Janus* ruling.[86] Thus, the Unions did not innocently use their power to take Plaintiffs' money. The Unions perpetuated their seizure of funds with full knowledge that their actions likely violated Plaintiffs' First Amendment rights.

---

82 *See Filarsky*, 566 U.S. at 384.
83 *Janus*, 138 S. Ct. at 2465-2466.
84 *Janus*, 138 S. Ct. at 2484 (emphasis added) (citing *Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277 (2012); *Harris v. Quinn*, 134 S. Ct. 2618 (2014); *Friedrichs v. Cal. Teachers Ass'n*, 135 S. Ct. 2933 (2015) (granting writ of certiorari); *Friedrichs v. Cal. Teachers Ass'n*, 136 S. Ct. 1083 (2016) (*per curiam*)).
85 *Id.* at 2485.
86 *See* Seidemann Decl. at ¶ 4 and Ex. B, an article from NYSUT's May 2017 issue of its monthly magazine.

16

## 2. Actual evidence shows a lack of good faith.

In fact, although discovery is needed with respect to the Unions' lack of subjective good faith, a few examples of existing evidence show that the Unions were not acting in good faith.[87] As these examples illustrate, the Unions flagrantly charged Plaintiffs and other fee payers more than *Hudson* and related cases allowed. This evidence alone should defeat the Unions' assertion that they have acted in "good faith" as it shows just the opposite.

### a. NYSUT knowingly violated *Seidemann* by charging fee payers for political advocacy at its 2017 convention.

In 2002, Plaintiff Seidemann sued Defendants PSC and NYSUT for using agency fees deducted from his (and other nonmembers') pay to subsidize activities not germane to PSC's collective bargaining function, eventually resulting in the opinion in *Seidemann v. Bowen*, 584 F.3d 104 (2d Cir. 2009). At issue in these cases was whether the unions were using agency fees for political matters or other matters not germane to the collective bargaining function. Although factual development will demonstrate that the Unions have violated *Seidemann* in many respects, one illustrative violation that can be conclusively established now should suffice for the present purpose.

Under several Supreme Court decisions, including *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991), and *Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986), prior to imposing an agency fee, a union must, on an annual basis, provide nonmember employees with a *Hudson* notice explaining how the amount of the fee was calculated to ensure that only the union's activities germane to the collective bargaining function were being funded by the fees.

---

[87] In addition to the argument and evidence discussed below, further evidence of bad faith is seen in Defendant PSC's refund of $51.75 in agency fees from Plaintiff Seidemann's paycheck on July 5, 2018 – a week after *Janus*. The refund, which supposedly included interest, was in the amount of $51.76, meaning that PSC included one penny in interest. PSC mailed the refund check to Seidemann on September 11, 2018. Thus, PCS paid interest at an annual rate of approximately 0.1% (one tenth of one percent). *See* Seidemann Decl., at ¶ 8.

Essentially, the union determined what percentage of its total expenditures were *not* germane to the collective bargaining function and had to refund to objecting nonmember employees that percentage of the full amount of the agency fees (which equals the amount charged as dues).

In *Seidemann*, the court held, among other things, that Defendant NYSUT could not allocate 100% of its convention costs as germane to the collective bargaining function because at least some parts of the convention were political in nature and therefore not germane to the collective bargaining function.[88]

Similarly, NYSUT's activities at its 2017 convention were partially, at least, political. Specifically, at the convention, the delegates (1) committed to defeat the state's proposed constitutional convention; (2) debated (and apparently passed) a resolution "calling for all public colleges and schools to be declared sanctuary institutions, responding to President Trump's actions to detain and deport undocumented residents and revoke protections for DACAs[,]" (3) debated (and apparently approved) a special order "calling for local unions to pump up organizing campaigns and enlist current members to pledge to remain dues-paying union members even in the event of a negative Supreme Court decision" (anticipating *Janus*);[89] and (4) debated (and apparently approved) a special order "calling for union members to avoid unnecessary travel to North Carolina, Kentucky and South Dakota to protest the states' recent discriminatory actions against the LGBTQ community."[90]  Indeed, the caption to one of the photos in NYSUT's magazine article about the convention states:  "More than 2,000 delegates took action on resolutions that will guide the union's advocacy in the coming year."[91]

---

[88]  *Seidemann*, 584 F.3d at 115-116.

[89]  Notably, *Seidemann* precludes the Unions from using agency fees to offset the costs of a "contract campaign" except to the extent the campaign is related to the collective bargaining function, which would be violated by the Unions' use of fees to drum up support for membership in the face of *Janus*.  *Id.* at 112-113.

[90]  *See* Seidemann Decl. at ¶ 4 and Ex. 1.B, an article from NYSUT's May 2017 issue of its monthly magazine.

[91]  *See* Ex. B to Seidemann Decl.

Regardless of whether one agrees or disagrees with the actions of the delegates, there is no doubt that these actions are inherently political and, even before *Janus*, it was unconstitutional for agency fees to be used to fund that part of the convention costs as a result, as *Seidemann* held.

Despite this, for the year ended August 31, 2017, NYSUT's *Hudson* notice states that 100% of its convention costs were chargeable to agency fee payers.[92]  This conclusively establishes that NYSUT and PSC violated *Seidemann*.[93]  As such, their assertion of "good faith" rings hollow at best.  Plaintiffs maintain that evaluation of the other Unions' expenditures will reveal that they, too, like NYSUT and PSC, were playing fast-and-loose with agency fees knowing that they were violating the Constitution, *even before the Supreme Court decided* Janus.

**b.     AAUPCBC knowingly violated *Hudson* by charging fee payers for services directed to union members.**

AAUPCBC's recent *Hudson* notice claims that 100% of its expenditures for "Member Benefits" and "Member Processing" were chargeable to agency fee payers.[94]  How can any part of these expenses be charged to fee payers, since fee payers are not "members"?  That fee payers were forced to pay for *any* part of expenditures benefiting only members, let alone 100% of those expenditures, seems clearly to indicate that AAUPCBC was intentionally overcharging fee payers prior to *Janus*.

**c.     AFT knowingly charged for services unrelated to PSC.**

Even though Defendant AFT represents public school teachers and has little, if any, involvement with university employees or employers, AFT's *Hudson* notice shows that it treated *all* of its collective bargaining, contract administrative expenses, *etc.*, as chargeable to PSC fee

---

[92]     *See* Seidemann Decl. at ¶ 3 and Ex. A, the relevant portion of NYSUT's *Hudson* notice.
[93]     PSC paid a net amount of $3,458,000 to NYSUT for the year ended August 31, 2017.  *See* Seidemann Decl. at ¶ 5 and Ex. C, the relevant portion of PSC's financial statement.
[94]     *See* Seidemann Decl. at ¶ 6 and Ex. D, the relevant portion of AAUPCBC's *Hudson* notice.

19

payers.[95] AFT's notice also shows that it charged 100% of the expenses for contract-related issues across a wide variety of activities, such as publications, educational training, collective bargaining, and the defense fund.[96] On its face, the AFT spent some of the money in each of these categories to serve solely the interests of their main constituency, public school teachers. In other words, it spent a portion of money in those categories in a way that is wholly unrelated to PSC fee payers. Yet it charged PSC fee payers 100% of those costs.

In doing so, the AFT violated *Abood* and *Hudson* in two ways. First, it failed to carry its burden that "potential objectors be given sufficient information to gauge the propriety of the union's fee."[97] Indeed, the AFT made no attempt whatsoever to apportion costs in these categories between those used solely for public school teachers and those used for PSC-related matters. Second, because AFT comingled PSC agency fees with AFT's other funds, which it then used to pay these categories of expenses on behalf of not only PSC but mostly for public school unions, it compelled PSC agency fee payers to subsidize AFT activities for other unions.[98]

## E. A good-faith defense is premature.

While qualified immunity grants immunity from suit, the good-faith defense does not. Plaintiffs should be allowed to take discovery on the issue. Based on *Janus*, relevant issues for discovery include evidence (including, for example, internal analyses) regarding planning for the likelihood that agency fees would be declared unconstitutional, information about when the Unions last entered into collective bargaining agreements affecting Plaintiffs, and, based on

---

[95] *See* Seidemann Decl. at ¶ 7 and Ex. E, the relevant portion of AFT's *Hudson* notice, at Note 2.

[96] *See* Seidemann Decl. at ¶ 7 and Ex. E, the relevant portion of AFT's *Hudson* notice, at Note 3.d, g, h, and k.

[97] "Basic considerations of fairness, as well as concern for the First Amendment rights at stake, also dictate that the potential objectors be given sufficient information to gauge the propriety of the union's fee. Leaving the nonunion employees in the dark about the source of the figure for the agency fee – and requiring them to object in order to receive information – does not adequately protect the careful distinctions drawn in *Abood*." *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 306 (1986).

[98] *Cf. Carroll v. Blinken*, 957 F.2d 991, 1002 (2d Cir. 1992) (holding that student activity fees comingled into a "general fund" are used to pay all of the organization's bills).

*Seidemann*, whether the Unions have knowingly been overcharging Plaintiffs and other fee-payers.  Thus, at a bare minimum, the Unions' motion is premature.

**V.**   **The Court should deny the Unions' motion concerning Plaintiffs' state-law claims.**

Contrary to the Unions' various arguments, Plaintiffs state viable state-law claims.

**A.**   **NY CIV. SERV. LAW § 215 does not preclude Plaintiffs' state-law claims.**

On April 12, 2019, the New York Legislature enacted NY CIV. SERV. LAW § 215.  That law purports to retroactively immunize the Unions for illegally collecting agency fees prior to June 27, 2018, the day the Supreme Court decided *Janus*.  The express language of this law shows that it does not apply here.  And, even if the law did purport to apply here, its application to Plaintiffs' claims would be unconstitutional for any of several reasons.

**1.**   **NY CIV. SERV. LAW § 215 does not apply to this case.**

By its terms, NY CIV. SERV. LAW § 215 applies only "if the fees were permitted or mandated at the time [deducted, received, or retained] under the laws of this state **then in force**" (emphasis added).  As Plaintiffs have already shown, NY CIV. SERV. LAW § 208, which purported to authorize agency fees, was unconstitutional (even before being so declared) and is void *ab initio*.  Thus, a necessary condition to immunity under § 215 is absent in this case.

**2.**   **If applied here, NY CIV. SERV. LAW § 215 would be unconstitutional.**

The U.S. and New York constitutions provide procedural and substantive due process protections against NY CIV. SERV. LAW § 215 as applied to Plaintiffs' claims, and the application of that law would result in an unlawful taking.  And the law violates NY Const., art. VII, § 6.

**a.**   **Section 215 violates procedural due process.**

A person may not be deprived of "property" without due process of law.  "There is no dispute that a legal cause of action constitutes a 'species of property protected by the Fourteenth

21

Amendment's Due Process Clause.'"[99]  Thus, the U.S. Supreme Court has repeatedly held that due process protects accrued causes of action.[100]  Unsurprisingly, New York law follows suit.[101]

The leading case in the past generation is *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982).  In *Logan*, a state statute required the dismissal of an administrative proceeding if the investigating commission failed timely to act.  The Court invoked a two-part due process inquiry: "[W]e must determine whether Logan was deprived of a protected interest, and, if so, what process was his due."[102]  The Court easily dispensed of the first question:  "The first question, we believe, was affirmatively settled by the *Mullane* case itself, where the Court held that a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause."[103]  "The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances."[104]  Thus, "the Fourteenth Amendment's Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action would be 'the equivalent of denying

---

[99]  *New York State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 163 (2d Cir. 2001).

[100]  *See, e.g., Munn v. Illinois*, 94 U.S. 113, 134 (1876) ("Rights of property which have been created by the common law cannot be taken away without due process[.]"); *Pritchard v. Norton*, 106 U.S. 124, 132 (1882) ("[A] vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference.  Whether it springs from contract or from the principles of the common law, it is not competent for the legislation to take it away."); *Gibbes v. Zimmerman*, 290 U.S. 326, 332 (1933) ("[A]lthough a vested cause of action is property and is protected from arbitrary interference, the appellant has no property, in the constitutional sense, in any particular form of remedy; all that he is guaranteed by the Fourteenth Amendment is the preservation of his substantial right to redress by some effective procedure."); *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 313 ("In two ways this proceeding does or may deprive beneficiaries of property.  It may cut off their rights to have the trustee answer for negligence or illegal impairment of their interests."); *Logan*, 455 U.S. at 428-430; *Webster v. Doe*, 486 U.S. 592, 603 (1988) ("[A] serious constitutional question … would arise if a federal statute were construed to deny any judicial forum for a colorable claim.").

[101]  *See, e.g., Brothers v. Florence*, 95 N.Y.2d 290 (N.Y. 2000); *Franza v. Olin*, 73 A.D.2d 44, 47 (N.Y. App. Div. 2010); *Stewart & Farber v. Bd. of Assessors*, 80 A.D.2d 186 (N.Y. App. Div. 1981); *Leone v. Tricario*, 245 N.Y.S. 81 (N.Y. Sup. Ct. 1930).

[102]  *Logan*, 455 U.S. at 428.

[103]  *Id.*

[104]  *Id.* at 429.

22

them an opportunity to be heard upon their claimed right[s].'"[105]  A cause of action is

constitutionally protected property.[106]

The Court then turned to "the determination of what process was due him."[107]  The Court

held that "'some form of hearing' is required before the owner is finally deprived of a protected

property interest" and "the State may not finally destroy a property interest without first giving

the putative owner an opportunity to present his claim of entitlement."[108]

Thus, the U.S. Supreme Court holds that a plaintiff must be given *some* opportunity to

present his claims.  Section 215 violates this principle by purporting to cut off Plaintiffs' causes

of action with no opportunity to present them.

> **b.     Section 215 violates substantive due process.**

The state's transfer of Plaintiffs' property to the Unions – which is § 215's effect –

violates Plaintiffs' substantive due process rights.  "The taking by a State of the private property

of one person or corporation, without the owner's consent, for the private use of another, is not

due process of law, and is a violation of the Fourteenth Article of Amendment of the

Constitution of the United States."[109]

---

[105]   *Id.* at 429-430 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971)).
[106]   *Id.* at 428.
[107]   *Id.* at 433.
[108]   *Id.* at 433-434 (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570-571 n.8 (1972)).  *See also New York State Nat'l Org. for Women*, 261 F.3d at 165; *Brothers*, 95 N.Y.2d at 300.
[109]   *Missouri P. Ry. Co. v. Nebraska*, 164 U.S. 403, 417 (1896).  *See also Wilkinson v. Leland*, 27 U.S. (2 Peters) 627, 658 (1829) ("We know of no case, in which a legislative act to transfer the property of A, to B, without his consent, has ever been held a constitutional exercise of legislative power in any state in the Union."); *Eastern Enters. v. Apfel*, 524 U.S. 498, 523 (1998) (op. of O'Connor, J.) (quoting *Calder v. Bull*, 3 U.S. (3 Dallas) 386, 388 (1798) ("'It is against all reason and justice' to presume that the legislature has been entrusted with the power to enact 'a law that takes *property* from A. and gives it to B'")).

### c. Section 215 effectuates an unlawful taking.

The Takings Clause of the Fifth Amendment to the U.S. Constitution, made applicable to the state through the Fourteenth Amendment,[110] provides that "private property [shall not] be taken for public use, without just compensation." N.Y. Const., art. I, § 7 provides similar protection. To the extent the Court enforces § 215 against Plaintiffs' claims, the law effectuates a taking of Plaintiffs' property for which they are entitled to just compensation.[111]

### d. Section 215 is unconstitutional under NY Const., art. VII, § 6.

Under NY Const., art. VII, § 6, a provision in a budget bill must relate to some appropriation in the bill.[112] No appropriation in the act adding § 215 relates to this provision.[113] The provision is, therefore, unconstitutional.

### B. The Court should not dismiss Plaintiffs' state-law claims as "duplicative."

Relying on *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777 (N.Y. 2012), the Unions argue that the Court should dismiss Plaintiffs' conversion and unjust-enrichment claims because those claims are "duplicative" of other claims. The Unions are wrong.

*Corsello* addresses only the viability of an unjust-enrichment claim in the face of a separate contract or tort claim and, thus, provides no basis for dismissing the conversion claim. Anyway, while *Corsello* held that the unjust-enrichment claim should be dismissed, it did so only because of the unique facts of that case – facts not present here.[114] Corsello asserted trespass and inverse-condemnation claims, in addition to an unjust-enrichment claim, against

---

[110]   *See Chicago, Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226 (1897).
[111]   *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994) (holding that the Takings Clause protects against retroactive legislation that deprives private persons of protected private property without just compensation). *See also Lynch v. United States*, 292 U.S. 571, 579 (1934).
[112]   *See Schuyler v. South Mall Constructors*, 32 A.D.2d 454, 455 (N.Y. App. Div. 1969).
[113]   *See* Exhibit 1 (L.2019, c. 56, pt. DD, § 1).
[114]   *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012)

Verizon because Verizon had a telephone terminal box attached to Corsello's building.[115]  The

trespass and inverse-condemnation would prevail if Verizon had no right to place the box on the

building; in that situation, Corsello's equitable unjust-enrichment claim would fail because he

would have an adequate remedy at law.[116]  On the other hand, the trespass and inverse-

condemnation claims would fail if Verizon had the right to put the box on the building; in that

situation, Corsello's unjust-enrichment claim would also fail because Verizon would not have

been *unjustly* enriched.[117]  Thus, it makes perfect sense that *Corsello* dismissed the unjust-

enrichment claim because the plaintiff there could not prevail on the unjust-enrichment claim

regardless of what happened to the other claims.[118]

Three of the other cases the Unions cite are similar to *Corsello* in that the claims truly

were duplicative.  In *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp.

3d 130 (S.D. N.Y. 2018), the plaintiff's fraud claim failed because the parties' contract had a no-

representation clause regarding the suitability of equipment the defendant leased to the

plaintiff.[119]  The plaintiff's conversion claim was also based on the defendant's allegedly

wrongful keeping of the rental proceeds; because the no-representation clause meant that the

defendant had no obligation to return the proceeds, the conversion claim failed.[120]  Finally, the

plaintiff's unjust-enrichment claim failed because it was not unjust for the defendant to keep the

---

[115]   *Id.* at 782-783.

[116]   *See Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 89 (N.Y. 2008).  Similarly, in *Marini v. Adamo*, 644 Fed.
    Appx. 33, 35-36 (2d Cir. 2016), which the Unions cite, the court held that the plaintiffs' unjust-enrichment
    claim needed to be dismissed since the plaintiffs had prevailed on their breach-of-fiduciary-duty claim.  This
    result is fully consistent with the rule that equity will not provide a remedy when the plaintiff has an adequate
    remedy at all.

[117]   *Corsello*, 18 N.Y.3d at 783-787 (describing claims).

[118]   *See Nuss v. Sabad*, Case No. 7:10-CV-279, 2016 WL 4098606 at *11 (N.D. N.Y. July 28, 2016) (explaining
    *Corsello*).

[119]   *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 148 (S.D. N.Y. 2018).

[120]   *Id.* at 151-152.

25

rental proceeds in light of the contract's no-representation provision.[121]  In other words, similar to *Corsello*, all of the claims necessarily failed once the court concluded that the no-representation clause controlled.  In *Komolov v. Segal*, 144 A.D.3d 487 (N.Y. App. Div. 2016), the plaintiff's contract claim was defeated by the statute of frauds so the plaintiff could not assert an unjust-enrichment (quasi-contract) claim based on the same promise barred by the statute of frauds or a conversion claim attempting to recover damages for amounts not paid under the barred contract.[122]  And in *Calastri v. Overlock*, 125 A.D.3d 554 (N.Y. App. Div. 2015), the plaintiff asserted conversion and trespass-to-chattel claims, which are identical claims (other than the extent of the invasion), so the claims truly were duplicative of each other.[123]  The results in these cases make sense, but are inapposite here.

The Unions' remaining cases misinterpret *Corsello*.[124]  Each case latches onto one sentence in *Corsello*:  "To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects."[125]  The cases fail to recognize that, in *Corsello*, the unjust-enrichment claim *necessarily* stood or fell with the other claims.

Moreover, the logic of the Unions' remaining cases would effectively preclude unjust-enrichment claims.  Obviously, this is not what *Corsello* intends because *Corsello* holds that a valid unjust-enrichment claim exists when "the defendant, though guilty of no wrongdoing, has

---

[121]  *Id.* at 152.
[122]  *Komolov v. Segal*, 144 A.D.3d 487, 488 (N.Y. App. Div. 2016).
[123]  *Calastri v. Overlock*, 125 A.D.3d 554, 555 (N.Y. App. Div. 2015).
[124]  *See Leder v. Am. Traffic Solutions*, 81 F. Supp. 3d 211, 227 (E.D. N.Y. 2015); *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503 (S.D. N.Y. 2015); and *Hughes v. Ester C. Co.*, 330 F. Supp. 3d 862 (E.D. N.Y. 2018).  *Leder* was affirmed on appeal but the Second Circuit expressly declined to consider the correctness of the district court's duplicative-claim analysis.  *Leder v. Am. Traffic Solutions*, 630 Fed. Appx. 61, 63 (2d Cir. 2015).
[125]  *Corsello*, 18 N.Y.3d at 791.

26

received money to which he or she is not entitled."[126]  This is precisely the situation here if Plaintiffs' § 1983 and conversion claims fail for some reason.  Indeed, that *Corsello* is not as broad as the Unions argue is clear from a later decision of the New York Court of Appeals.  In *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441 (2018), the Court considered how to measure damages for a plaintiff asserting claims of misappropriation of a trade secret, unfair competition, and unjust enrichment.[127]  The Court recited the legal standard for the unjust-enrichment claim, even noting that "this doctrine … is not a catchall cause of action to be used when others fail[,]" – quoting *Corsello* – and then determined how damages should be measured for that claim.[128]  Note that the Court did not hold that the unjust-enrichment claim should be dismissed as "duplicative" of other claims.

The only other reading of the Unions' remaining cases is that an unjust-enrichment can proceed if it is the only claim the plaintiff asserts but must be dismissed if the plaintiff asserts an alternative claim.  Yet the court rules expressly countenance alternative legal claims.

Thus, the Court should reject the Unions' arguments based on the supposedly duplicative nature of Plaintiffs' state-law claims.

### C.     The *Martin* rule does not preclude Plaintiffs' state-law claims.

The Unions (other than Defendant NEA) argue that Plaintiffs' state-law claims against them should be dismissed under *Martin v. Curran*, 303 N.Y. 276 (1951), and *Palladino v. CNY Centro, Inc.*, 23 N.Y.3d 140 (2014).  Wrong.  The rationale for these decisions is that an unincorporated association cannot be sued for an intentional tort or breach-of-contract unless the

---

[126]  *Id.* at 790.
[127]  *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 444 (2018).
[128]  *Id.* at 456.

members of the association either authorized the wrongful act in advance or ratified it after the fact.[129]  The Court should reject the Unions' argument for any of several reasons.

First, the Unions use declarations to support this part of their motion.  Of course, this is not allowed under *Goel* and for this reason alone the Court should reject the Unions' argument.  Plus, the amended complaint asserts that the members ratified the Unions' actions and Plaintiffs should have the opportunity for discovery in that regard.

Second, even if the Unions (other than NEA) are unincorporated associations, their members authorized the Unions to take agency fees from Plaintiffs.  Under *Palladino* and *Madden v. Atkins*, 4 N.Y.2d 283 (N.Y. 1958), members' authorizing of action negates the *Martin* rule.[130]  At least with PSC and FASCCC, the members expressly authorized the Unions to take the agency fees when they approved the collective bargaining agreements.[131]  Further, because § 208 purported to authorize the taking of agency fees, the Unions' members implicitly authorized the same by *not* precluding the Unions from accepting agency fees.

Third, the *Martin* rule is intended to prevent members of an unincorporated association from being held liable for intentional misconduct by one member when that misconduct was neither authorized nor ratified.  Thus, the *Martin* rule does not apply to a negligence claim.[132]  While conversion is an intentional tort, the intention need only involve taking of the property, which the members knew was happening, not that the defendant knew the taking was wrongful.[133]  Thus, conversion is akin to negligence in this respect.

---

[129]  *Palladino v. CNY Centro, Inc.*, 23 N.Y.3d 140, 146 (N.Y. 2014) (citing *Martin v. Curran*, 303 N.Y. 276, 280 (N.Y. 1951)).

[130]  *See id.* at 148; *Madden v. Atkins*, 4 N.Y.2d 283, 296 (N.Y. 1958); *Madden*, 4 N.Y.2d at 298 (Desmond, J., concurring).

[131]  *See* PSC's CBA at § 4.2; FASCCC's CBA at art. III.A.

[132]  *Piniewski v. Panepinto*, 267 A.D.2d 1087, 1087 (N.Y. App. Div. 1999); *Grahame v. Rochester Teachers Ass'n*, 262 A.D.2d 963, 963 (N.Y. App. Div. 1999).

[133]  *See* REST. (2D) OF TORTS § 244.

Finally, there is no basis to apply the *Martin* rule to Plaintiffs' unjust-enrichment claim since that claim does not require any wrongdoing[134] and every member would be unjustly enriched if the Unions were permitted to keep Plaintiffs' money.

### D.  Plaintiffs have stated a valid claim for conversion.

The Unions argue that there can be no conversion here because a presumptively valid law authorized the taking of Plaintiffs' wages.  Wrong.  As stated in Argument III.B, NY CIV. SERV. LAW § 208 *never* provided valid authority to take Plaintiffs' wages but rather is void *ab initio*.

The Unions' argument that there can be no liability for following a statute is also wrong. While *Colavita v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006), does indicate that conversion involves intentional control over property "without authority," an unconstitutional statute does not provide valid authority.[135]  The cases the Unions cite – *Bradley v. Roe* 282 N.Y. 525 (1940), and *Goldstein v. Olympus Optical Co.*, 98 A.D.2d 91 (N.Y. App. Div. 1983) – do not advance the Unions' argument because neither case involved a statute the validity of which was challenged.[136]  *See also* Argument III.D.

### E.  Plaintiffs have stated a valid claim for unjust enrichment.

The Unions argue that enrichment must be unjust for an unjust-enrichment claim. Plaintiffs do not dispute this, but do dispute that *1133 Taconic, LLC v. Lartrym Servs., Inc.*, 85 A.D.3d 992 (N.Y. App. Div. 2011), supports the Unions' argument.  In that case, the court rejected the unjust-enrichment claim, not because the enrichment was unjust, but because the plaintiff had unclean hands and so was denied equitable relief.[137]

---

134  *Corsello*, 18 N.Y.3d at 790.
135  *See* REST. (2D) OF TORTS § 244 (mistake of law is not a defense to conversion).
136  Further, in *Goldstein*, action was not taken pursuant to the statute; instead, the statute was relevant only insofar as it dictated when title to property transferred.
137  *1133 Taconic, LLC v. Lartrym Servs., Inc.*, 85 A.D.3d 992 (N.Y. App. Div. 2011).

29

The Unions also argue that Plaintiffs benefited from the collective bargaining activities of Defendants PCS, FASCCC, and AAUPCBC. This argument is seriously flawed. In effect, the Unions are asserting that Person D can steal money from Person P and avoid being unjustly enriched by providing some service to Person P that Person P does not ask for or want. The whole point of *Janus* is that Plaintiffs cannot be charged for any services – including collective bargaining activities – they do not ask for or want but actually oppose.

As Plaintiffs have previously argued, as between the wrongdoers (even if they did not intend to illegally take money from Plaintiffs) and the victims whose money was illegally taken, there can be no question but that the equities require the Unions to return Plaintiffs' money to them.

Finally, an equitable award is warranted after a statute is declared unconstitutional.[138]

## CONCLUSION

Plaintiffs respectfully ask that the Court deny the Unions' motion to dismiss.

Respectfully submitted,

Dated: June 21, 2019

CLARK HILL PLC

*/s/ Gregory N. Longworth*
Gregory N. Longworth (*Admitted Pro Hac Vice*)

830 Third Avenue, Suite 200
New York, New York 10022
Tel. 215.640.8535
Fax 215.640.8501
glongworth@ClarkHill.com

John J. Bursch (*Admtted Pro Hac Viced*)
BURSCH LAW PLLC
9339 Cherry Valley Ave. SE, #78
Caledonia, Michigan 49316
Tel. 616.450.4235
jbursch@burschlaw.com

---

[138] *NYPIRG, Inc. v. Steingut*, 40 N.Y.2d 250, 260 (N.Y. 1976); *People ex rel. Beck v. Graves*, 280 N.Y. 405, 410 (N.Y. 1939); *Chenango Bridge Co. v. Paige*, 83 N.Y. 178, 190-191 (N.Y. 1880).

30