# STROOCK

By eFile

July 31, 2019

Charles Moerdler
Direct Dial: 212.806.5648
cmoerdler@stroock.com

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

Re:  Seidemann, *et al* v. Professional Staff Congress Local 2334, *et al*
       Index No. 18-cv-09778 (KPF)

Dear Judge Failla:

We write on behalf of all Defendants to bring to the Court's attention supplemental authority directly relevant to the Court's consideration of Defendants' pending motion to dismiss the amended complaint. The annexed decision was issued after the pending motion had been submitted and supports Defendants' arguments for dismissal.

In Ogle v. Ohio Civil Serv. Employees Ass'n, AFSCME, Local 11, No. 2:18-CV-1227, 2019 WL 3227936 (S.D. Ohio July 17, 2019) (attached hereto as Exhibit A), the Southern District of Ohio granted defendant's motion to dismiss virtually identical claims under F.R.C.P. 12(b)(1) and (6). Ogle alleged claims for prospective relief and retroactive agency fees, raising arguments in opposition to that motion that are also before this Court. The Ogle court held unequivocally that a good faith defense, as distinct from qualified immunity, exists and is available to union defendants in cases such as these: "this is precisely the type of case the Supreme Court and the Fifth Circuit had in mind when establishing the good faith defense; the defense protects [union defendant] in this case." Id., at *6. The court further rejected each of Ogle's attempts to undermine the defense, finding that: (1) there is no requirement that the underlying offense contain a scienter requirement (*7-8); (2) even if scienter were required, the most analogous tort would be one with a dignitary component (*8 n.2); (3) the defense is available to private entities, not just individuals (*8); (4) the good faith defense may be found to apply as a matter of law (*9); and (5) it was objectively reasonable for the union to rely on then valid law and precedent, despite the possibility that the Supreme Court may reverse such precedent (*9-10). Of concern to the court was the chilling effect of plaintiffs' positions on private parties, who would fear being held liable for relying on then constitutionally valid state statutes. Id., at *10. Finally, the court also dismissed the prospective claims for lack of standing, noting that the basis for this conclusion is the same as findings by other courts that similar claims had become moot. Id., at *4

July 31, 2019

Thank you for your consideration of this matter.

Respectfully submitted,

/s/ Charles Moerdler

Charles Moerdler

Enclosure

cc: All Counsel of Record for Plaintiffs & Co-Defendants (via email transmission)

STROOCK & STROOCK & LAVAN LLP   New York ・ Los Angeles ・ Miami ・ Washington, DC
180 Maiden Lane, New York, NY 10038-4982 ・ T. 212.806.5400 ・ F. 212.806.6006 ・ www.stroock.com

2

# Exhibit A

**2019 WL 3227936**
Only the Westlaw citation is currently available.
United States District Court, S.D. Ohio, Eastern Division.

Nathaniel OGLE, Plaintiff,
v.
OHIO CIVIL SERVICE EMPLOYEES
ASSOCIATION, AFSCME, LOCAL 11, Defendant.

Case No. 2:18-cv-1227
|
Signed 07/17/2019

**Attorneys and Law Firms**

Aaron Solem, Pro Hac Vice, William L. Messenger, Pro Hac Vice, National Right to Work Legal Defense Foundation, Springfield, VA, Donald Carl Brey, Isaac Wiles Burkholder & Teetor, LLC, Columbus, OH, for Plaintiff.

Brian J. Eastman, Ohio Civil Service Employees Assoc., Westerville, OH, April Heather Pullium, Pro Hac Vice, Leon Dayan, Pro Hac Vice, Richard Griffin, Jr., Pro Hac Vice, Bredhoff & Kaiser, PLLC, Washington, DC, for Defendant.

## OPINION AND ORDER

GEORGE C. SMITH, JUDGE

*1 This matter is before the Court upon Defendant's Motion to Dismiss (the "Motion") (Doc. 12). The motion is fully briefed and ripe for disposition. For the following reasons, the Motion is **GRANTED**.

## I. BACKGROUND

Nathaniel Ogle has been employed by the Ohio Department of Taxation since 2011. (Doc. 1, Compl. ¶ 13). Since the beginning of his employment, Ogle has been subject to the exclusive representation of the Ohio Civil Service Employees Association, AFSCME, Local 11 ("OCSEA") and the terms of the collective bargaining agreements OCSEA enters into with the State of Ohio. (*Id.* at ¶ 6). Ogle is not, and never has been, a member of the OCSEA. (*Id.* at ¶ 7). Ohio's

Public Employees' Collective Bargaining Act (the "Act"), Ohio Revised Code § 4117, authorizes exclusive representatives and public employers to enter into agency fee provisions that require, as a condition of employment, "that the employees in the unit who are not members of the employee organization pay to the employee organization a fair share fee." Ohio Rev. Code § 4117.09(C). (*Id.* at ¶ 8). The Act further provides that "[t]he deduction of a fair share fee by the public employer from the payroll check of the employee and its payment to the employee organization is automatic and does not require the written authorization of the employee." *Id.* OCSEA's collective bargaining agreements with the State of Ohio for the term of July 1, 2015 to February 28, 2018, which governs Ogle's employment, contains a compulsory fee clause that dictates:

> Any bargaining unit employee who has served an initial sixty (60) days and who has not submitted a voluntary membership dues deduction authorization form to the Employer shall, tender to the Union a representation service fee beginning in the pay period that includes the 61st day. The amount shall not exceed the dues paid by similarly situated members of the employee organization who are in the bargaining unit. The Union shall continue to provide an internal rebate procedure which provides for a rebate of expenditures in support of partisan politics or ideological causes not germane to the work of employee organizations in the realm of collective bargaining. When an employee enters the bargaining unit for any reason, the Employer shall notify the employee of this Article and provide the employee the appropriate deduction forms. Fair share fee deductions shall begin after sixty (60) days of service. The Employer shall tender to the Union a representation service fee beginning in the pay period that includes the 61st day.

(*Id.* at ¶ 9). Ogle was compelled to pay fair share fees to OCSEA pursuant this clause, which were automatically deducted from his paycheck. (*Id.* at ¶ 10). OCSEA's collective bargaining agreements with other public employers in Ohio also contain forced fee clauses that compel nonmembers of the union to pay fees to the union as a condition of their employment. (*Id.* at ¶ 11). On June 27, 2018, the Supreme Court held forced fee requirements to be unconstitutional under the First Amendment and that unions could not constitutionally collect union dues or fees from public employees without their affirmative consent. (*Id.* at ¶ 12); *Janus v. AFSCME, Council 31,* 138 S. Ct. 2448, 2486 (2018).

***2** Following *Janus*, OSCEA ceased the collection of mandatory fair share fees and has indicated that it has no intention to re-instate the collection of such fees in the future. (Doc. 12-2, Ex. 1, Letter to David Blair at 1); (Doc. 12-2, Decl. of Christopher Mabe at 3).

## II. STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. Sw. Detroit Hosp.,* 895 F.2d 1131, 1133 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading," and the trial court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990)). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC,* 816 F.3d 383, 387 (6th Cir. 2016).

A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). When examining a factual attack under Rule 12(b)(1), "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). The plaintiff has the burden of establishing jurisdiction in order to survive the motion to dismiss. *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004); *Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990).

Defendant also brings their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiff has failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012)

(quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

**\*3** In the Complaint, Ogle prays for prospective relief in the form of an injunction preventing OCSEA from collecting mandatory fair share fees and a declaration that the Act is unconstitutional. (Doc. 1, Compl. ¶¶ 26(b)–(d)). Ogle also prays for retroactive damages in the form of a refund of the fees collected by OCSEA before *Janus* was decided. (*Id.* at ¶ 26(e)). Ogle additionally prays for nominal damages. (*Id.* at ¶ 26(f))

In the Motion, OCSEA challenges Ogle's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing with regards to the requests for prospective relief. (Doc. 12, Def.'s Mot. at 5). OCSEA challenges Ogle's claims for damages pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (*Id.* at 10). This Court will address each of these arguments in turn.

**A. Plaintiff Lacks Standing to Seek Prospective Relief**
OCSEA argues that Ogle lacks standing for prospective relief because OCSEA no longer collects mandatory fair share fees and therefore it is not likely that OCSEA will harm him in the future. Ogle counters that, because the Act is still in effect, he has standing. This Court agrees with OCSEA.

The jurisdiction of the federal courts is limited. Article III § 2 of the United States Constitution grants the federal courts jurisdiction only over specified "cases" or "controversies." Absent a live "case or controversy," a federal court has no subject matter jurisdiction and the case must be dismissed. This "case or controversy" requirement gives rise to the concept of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992).

In order to establish constitutional standing, a plaintiff must demonstrate the following: (a) that it has suffered an "injury in fact," a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (b) a causal connection between the injury and the challenged conduct; and (c) that a favorable court decision is likely to redress or remedy the injury. *Lujan*, 504 U.S. at 560–61; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–103, 118

S.Ct. 1003, 140 L.Ed.2d 210 (1998). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.*, 532 U.S. at 103–104.

At its core, the doctrine of standing requires the plaintiff to allege "a distinct and palpable injury to himself." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The injury must be particularized to the plaintiff and concrete, not abstract, conjectural, or hypothetical. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). When seeking prospective relief, evidence of past injury alone is insufficient to establish standing. *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017), *cert. denied sub nom. Crawford v. Dep't of Treasury*, 138 S. Ct. 1441 (2018). An individual requesting prospective relief must show that there is a future threat of suffering harm that is "real and immediate and not premised upon the existence of past injuries alone." *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th Cir. 2014) (citing *Lyons*, 461 U.S. at 102-03).

An illustrative example is the Sixth Circuit's decision in *Sumpter v. Wayne Cty*, 868 F.3d 473 (6th Cir. 2017). In *Sumpter*, the plaintiff requested injunctive and declaratory relief pursuant to a county jail's strip search policy. *Sumpter*, 868 F.3d at 490. The Sixth Circuit found that the plaintiff did not have standing for two reasons: 1) the plaintiff had left jail and could not prove there was a likelihood she would return ("she left the jail in November 2012, and we can only speculate as to whether she will ever return"), and 2) the jail had since changed its policy regarding strip searches ("[t]he likelihood of future injury is further diminished by the fact that defendants have changed their official policy to prohibit group strip searches"). *Id.* at 491. The Sixth Circuit emphasized that in the context of injunctive or declaratory relief, " '[P]ast exposure to illegal conduct ... unaccompanied by any continuing, present adverse effects,' will not suffice to establish 'a present case or controversy.' " *Id.* at 491 (quoting *Lyons*, 461 U.S. at 102). The Court found that past exposure to illegal conduct "is precisely what the plaintiff alleges[.]" *Id.*

*4 The case at hand is analogous to *Sumpter* because OCSEA has changed its mandatory fee collection policy in light of *Janus* and is no longer collecting mandatory fair share fees. Ogle cites no evidence that there is a likelihood of OCSEA collecting mandatory fair share fees again. Rather, Ogle only argues that OCSEA "could" reinstate their former policy. (Doc. 13, Resp. at 1) ("The argument fails because the statute remains in existence and OCSEA could resume its fee seizures pursuant to the statute."). Like in *Sumpter*, this fear of further injury is speculative at best. Also like *Sumpter*, OCSEA has officially changed its policy and has stopped collecting mandatory fair share fees. (Doc. 12-2, Ex. 1, Letter to David Blair at 1) ("we are hereby requesting that the Employer cease collecting Fair Share Fees as of June 27, 2018 to be in compliance with the Court's decision in *Janus*."). Further, OCSEA issued a statement that they have no intention of collecting such fees in the future in light of *Janus*. (Doc. 12-2, Decl. of Christopher Mabe at 3) ("OCSEA understands that, as the Supreme Court has ruled in *Janus*, fair share requirements in

public sector employment are now unconstitutional. OCSEA will fully comply with the Court's decision, and understands that any provisions of state law or of collective bargaining agreements that purport to authorize such fair share fees in the public sector are no longer enforceable."). *Id.* Finally, as OCSEA points out, the state's cooperation is needed for the collection of mandatory fair share fees. (Doc. 12, Def.'s Mot. at 7–8). In other words, the state would have to be complicit in ignoring the law set forth in *Janus*. This further decreases the chance that OCSEA will violate Ogle's First Amendment rights again.

This Court is not the first to consider the issue of whether plaintiffs can sue for prospective relief after *Janus*. In *Lee v. Ohio Educ. Ass'n*, 366 F. Supp. 3d 980 (N.D. Ohio 2019) the court found that the plaintiff's "request for injunctive relief is moot." *Id.* at 981. In reaching this conclusion, the court stepped in line with other district courts and stated " 'the Supreme Court's new and controlling precedent ... announced a broad rule invalidating every state law permitting agency fees to be withheld.' " *Id.* at 982 (quoting *Lamberty v. Connecticut State Police Union*, No. 3:15-cv-378, 2018 WL 5115559, at *9 (D. Conn. Oct 19, 2018)). [1]

While *Lee* held that the plaintiff's claims were moot, here, Ogle lacks standing. However, because "mootness is just 'standing set in a time frame,' " the logic of *Lee* is useful here. *Sumpter*, 868 F.3d at 490 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). In other words, a case becomes moot when an actual controversy existed when a plaintiff brought suit but later ceased to exist; a case lacks standing when no controversy exists when the plaintiff brings suit. *Id.* Because Ogle brought this case post *Janus*, no controversy existed when Ogle sued. Thus, Ogle lacks standing.

Ogle contends that he does have standing and relies on a line of cases following the Supreme Court's decision in *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015). (Doc. 13, Response at 2). In these cases, various courts issued injunctions that prevented states from enforcing restrictive marriage laws following *Obergefell*. Ogle argues that the current situation following *Janus* is similar to the cases following *Obergefell*. However, OCSEA counters that the *Obergefell* comparisons are not appropriate. This Court agrees with OCSEA.

First, the *Obergefell* line of cases addressed issues ancillary to the heart of the *Obergefell* decision. For example, while *Obergefell* invalidated marriage laws of four states, one of the cases that Ogle cites involved name changes on same-sex couples driver's licenses. *Rosenbrahm v. Daugaard*, 799 F.3d 918, 922 (8th Cir. 2015) ("the [Supreme] Court did not determine all issues raised by Plaintiffs here (for example, name-changes on driver's licenses)"). The remaining cases Ogle cites to support the *Obergefell* comparison have similar problems—they address issues that are ancillary to the *Obergefell* decision. This differs from the case at hand because *Janus* prohibits the exact behavior that Ogle seeks to enjoin. Ogle requests declaratory and injunctive relief from the collection of mandatory fair share fees; that is precisely what *Janus* prohibits.

**\*5** Second, the language in *Obergefell* specifically invalidated laws in four states, but not other states' marriage laws. *Rosenbrahm,* 799 F.3d at 922 ("The Court invalidated laws in Michigan, Kentucky, Ohio, and Tennessee—not South Dakota."). However, the language in *Janus* places no such limitations on its holding. *Janus,* 138 S. Ct. at 2486 ("States and public-sector unions may no longer extract agency fees from nonconsenting employees"). This Court agrees that "cases survived post-*Obergefell* because courts concluded that specific, state statutes had not been the subject of the decision by the Court in *Obergefell*. The same cannot be said here." *Lee,* 366 F. Supp. 3d at 982.

Finally, Ogle argues that an injunction is proper in the case at hand because the *Janus* decision imposes no legal obligation directly on OCSEA. (Doc. 13, Response at 2). While the Supreme Court's decision does not bind OCSEA specifically, it broadly prohibits unions from collecting mandatory fair share fees, which encompasses OCSEA's activity. Further, this argument is unpersuasive because the lack of a binding legal obligation on one party does not establish standing for the other party.

For the above reasons, Ogle "has not shown that he 'has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct and [that] the injury or threat of injury [is] both real and immediate, not conjectural or hypothetical.' " *Bailey v. City of Howell,* 643 F. App'x 589, 602 (6th Cir. 2016) (quoting *Lyons,* 461 U.S. at 101–02). Therefore, Ogle lacks standing for injunctive or declaratory relief and the Motion, as it relates to those claims, is **GRANTED**.

### B. Plaintiff Cannot Establish Defendant's Liability for Retroactive Relief

Ogle brings claims pursuant to § 1983 of Title 42 of the United States Code for OCSEA to repay fees attributable to the time prior to the *Janus* decision. OCSEA argues that it is entitled to a good faith defense and thus, Ogle has failed to state a claim upon which relief can be granted. (Doc. 12, Def's. Mot. at 10). Ogle counters that the good faith defense is not applicable in this case, but even if it is, OCSEA has not acted in good faith. (Doc. 13, Response at 3–18).

§ 1983 of Title 42 of the United States Code imposes civil liability on individuals who act under the color of state law and deprive a citizen of their constitutional rights. *See Brousseau v. Haugen,* 543 U.S. 194, 197–98 (2004). For a plaintiff to state a claim under § 1983, they must show: 1) their constitutional right(s) have been violated and 2) a person acting under the color of state law caused the violation. *Baynes v. Cleland,* 799 F.3d 600, 607 (6th Cir. 2015). OCSEA does not dispute either prong of this analysis—that Ogle's constitutional rights were violated or that OCSEA acted under the color of state law. However, OCSEA does assert a good faith defense.

In *Lugar v. Edmondson Oil Co*. the Supreme Court held that private actors could be sued under § 1983. 457 U.S. 922, 942 (1982). However, the Court did not address whether private parties, like their government counterparts, are entitled to qualified immunity. *Id.* at 942 n.23 ("We need not reach the question of the availability of such a defense to private individuals at this point."). Ten years later, in *Wyatt v. Cole*, the Supreme Court held that qualified immunity is not available to private actors sued under § 1983. 504 U.S. at 168–69 (1992) ("The precise issue encompassed in this question ... is whether qualified immunity, as enunciated in *Harlow*, is available for private defendants faced with § 1983 liability for invoking a state replevin, garnishment, or attachment statute. That answer is no."). However, in dicta the Court indicated that a "good faith" defense *may* be available to private actors. *Id.* at 169 ("we do not foreclose the possibility that private defendants faced with § 1983 liability under *Lugar*, could be entitled to an affirmative defense based on good faith and/or probable cause"). The Supreme Court reasoned that while the rationales underlying qualified immunity do not extend to private parties, it may be unfair for a government actor to have access to qualified immunity while private parties have no protection from liability for following the law. *Id.* at 168. On remand, the Fifth Circuit found that private parties do have such a good faith defense. *Wyatt v. Cole*, 994 F.2d 1113, 1115 (5th Cir. 1993) ("we now hold that plaintiffs seeking to hold private actors liable under *Lugar*, must demonstrate that defendants failed to act in good faith ...").

**\*6** Even without the Supreme Court's explicit endorsement, the Sixth Circuit adopted the good faith defense. *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 699 (6th Cir. 1996) ("[the Fifth Circuit] held that private persons who act under color of law may assert a good faith defense. The Third Circuit has agreed. Now, so do we.") (internal citations omitted). However, the Sixth Circuit has not supplied further guidance on the specific contours of the defense. Without further guidance from the Sixth Circuit, and because the Sixth Circuit cited *Wyatt* in adopting the defense, this Court looks to the Fifth Circuit and other courts' interpretations to determine the contours and rationale supporting the good faith defense.

The Fifth Circuit, drawing from the Supreme Court's decision in *Wyatt*, found that "principles of equality and fairness" support the idea that "private defendants 'should have some protection for liability.' " *Wyatt*, 994 F.2d at 1118 (quoting *Wyatt*, 504 U.S. at 168). *See also Babb v. California Teachers Association*, No. 2:18CV06793, 2019 WL 2022222 at \*7 (C.D. Cal. May 8, 2019) (stating that *Wyatt* based the good faith defense on principles of equity and fairness). Similarly, other courts have acknowledged that equality and fairness are the pillars of the good faith defense. *See Danielson v. AFSCME, Council 28, AFL-CIO*, 340 F. Supp. 3d 1083, 1085 (W.D. Wash. 2018) ("Although the precise contours of the defense have not been clearly defined by the Supreme Court, circuit courts, including the Ninth Circuit, have acknowledged its general contours of equity [sic] and fairness."); *Mooney v. Illinois Education Association*, 372 F. Supp. 3d 690, 703 (C.D. Ill. 2019) ("The principles of fairness and equality underlying the good-faith defense in the § 1983 context ..."). Relying on these principles, the Fifth Circuit held: "private defendants sued on the

basis of *Lugar* may be held liable for damages under § 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures, that is, if they either knew or should have known that the statute upon which they relied was unconstitutional." *Wyatt*, 994 F.2d at 1118.

Thus, in the wake of *Wyatt*, it is clear that the good faith defense and qualified immunity are not based on similar rationales. Qualified immunity is supported by " 'a tradition of immunity [omitted] so firmly rooted in the common law and [omitted] supported by such strong policy reasons ...' " whereas the good faith defense is based on equality and fairness. *Wyatt*, 504 U.S. at 164 (quoting *Owen v. City of Independence*, 445 U.S. 622, 637 (1980)); *see also Richardson v. McKnight*, 521 U.S. 399, 403-04 (1997) (discussing the rationales supporting qualified immunity).

In the case at hand, the good faith defense protects OCSEA. OCSEA collected mandatory fair share fees pursuant to a presumptively valid Ohio statute. Further, OCSEA was entitled to rely upon the findings of the Supreme Court in *Abood v. Detroit Bd. Of Ed.*, 431 U.S. 209 (1977). *Abood* held that unions could collect mandatory fair share fees. *See* 431 U.S. 209 (1977). Because OCSEA collected fees under a presumptively valid statute and pursuant to then-valid Supreme Court precedent, there is no way that OCSEA "knew or should have known that the statute upon which they relied was unconstitutional." *Wyatt*, 994 F.2d at 1118. Put another way—OCSEA was simply following presumptively valid law.

When a government official acts pursuant to a presumptively valid law that later becomes unconstitutional, qualified immunity offers them protection because it is objectively reasonable to follow the law. *See Leonard v. Robinson*, 477 F.3d 347, 366 (6th Cir. 2007) ("the Sixth Circuit has resisted imposing liability on police officers and other officials who fail to anticipate each twist and turn of judicial review."). The principles of equality and fairness, upon which the good faith defense is premised, demand that some protection be afforded to private actors in such a scenario. Therefore, this is precisely the type of case the Supreme Court and the Fifth Circuit had in mind when establishing the good faith defense; the defense protects OCSEA in this case.

**\*7** This Court is not alone in addressing this issue. Similarly situated plaintiffs have filed suit in other courts and this Court's colleagues have ruled that the good faith defense is available to unions who collected mandatory fair share fees prior to *Janus*. *See e.g., Lee v. Ohio Education Association*, 366 F. Supp. 3d 980 (N.D. Ohio 2019); *Danielson v. AFSCME, Council 28, AFL-CIO*, 340 F. Supp. 3d 1083 (W.D. Wash. 2018); *Mooney*, 372 F. Supp. 3d 690; *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996 (D. Alaska 2019). This Court can find no reason to depart from these courts on this issue.

Ogle advances several arguments against the availability of the good faith defense. Ogle argues: 1) the good faith defense does not apply in First Amendment cases, 2) OCSEA is not entitled to qualified immunity, 3) OCSEA tries to mask qualified immunity as a good faith defense, and 4)

OCSEA is not entitled to a good faith defense because it is an entity and municipalities are not entitled to qualified immunity. Finally, Ogle argues that even if the good faith defense applies, OCSEA did not act in good faith and he is entitled to discovery on OCSEA's subjective state of mind. (Doc. 13, Response at 3-18). This Court does not find any of Ogle's arguments persuasive.

First, Ogle argues that the good faith defense is not available here because OCSEA's subjective state of mind is irrelevant when determining if they committed a First Amendment violation. (Doc. 13, Response at 5). In other words, because a First Amendment violation does not require specific intent, whether OCSEA acted in good faith or bad faith is irrelevant. Ogle's argument is premised on the idea that the good faith defense is only available in cases where the underlying violation has a subjective component. This Court disagrees with that interpretation of the good faith defense.

Ogle pulls his argument from a discussion in *Duncan* and *Wyatt* where the courts analyze the good faith defenses available to parties at common law. (Doc. 13, Response at 8) ("*Duncan* and subsequent cases recognized only 'a common law good faith defense to malicious prosecution and wrongful attachment cases' ") (quoting *Duncan v. Peek*, 844 F.2d 1261, 1267 (6th Cir. 1988)). The availability of qualified immunity is partly based on whether parties were immune from suit at common law before Congress enacted § 1983, and in *Duncan* and *Wyatt* the courts discussed these common law defenses to determine if the parties had qualified immunity. *Duncan*, 844 F.2d at 1264 ("Thus the Supreme Court has adopted a two-part test to determine whether a particular immunity is consistent with the intent of § 1983. The first part requires the party claiming immunity to show that the immunity was recognized at common law ..."); *Carey v. Inslee*, 364 F. Supp.3d 1220, 1229 (W.D. Wash. 2019) ("while the Court did discuss common law analogues in dicta, that discussion was largely in reference to the history of qualified immunity."). The courts found that even though private parties had a defense at common law that would negate subjective components of the tort, private parties were not entitled to qualified immunity because the policy rationales underlying qualified immunity did not apply to private parties. *Wyatt*, 504 U.S. at 167 ("the reasons for recognizing such an immunity were based not simply on the existence of a good faith defense at common law, but on the special policy concerns involved in suing government officials ... the rationales mandating qualified immunity for public officials are not applicable to private parties.") (internal citations omitted). After this discussion about qualified immunity, the *Wyatt* court then stated that the absence of qualified immunity for private parties did not preclude the availability of a separate good faith defense. *Id.* at 169. The Fifth Circuit, on remand, then made clear that the good faith defense was available based on equality and fairness. *Wyatt*, 994 F.2d at 1118. Thus, the discussions of good faith defenses at common law and the current availability of the good faith defense to § 1983 claims were separate from one another and must be viewed as such. For this reason, Ogle's claim that the First Amendment is not subject to the good faith defense is misguided. Put simply, Ogle misconstrues a discussion on qualified immunity to apply to the good faith defense.

**\*8** Further, the Fifth Circuit announced a broad rule in *Wyatt*—it did not limit the defense to claims that had a subjective component or common law tort analogue with subjective component. *Carey*, 364 F. Supp.3d at 1229 ("*Wyatt* did not clearly limit the good faith defense to § 1983 claims with specific common law analogues."). Requiring a subjective component for the good faith defense to apply would only undercut the purpose of the defense. *See Mooney*, 372 F. Supp.3d at 703 ("Quibbles over which tort as it existed at common law in 1871 is most analogous to the harm wrought by the statute in question would only undercut these purposes."). Because the good faith defense is based on the principles of equality and fairness, this Court can think of no reason why it should be limited to certain types of claims.

This Court is not alone in taking this approach. Other similarly situated plaintiffs have argued that courts must look to the most closely analogous common law tort to determine if a good faith defense applied at common law, and only if so could the defendant exercise a good faith defense to a § 1983 claim. *See Danielson*, 340 F. Supp.3d 1083; *Babb*, No. 2:18CV06793, 2019 WL 2022222; *Mooney*, 372 F. Supp. 3d 690; *Nemo v. City of Portland*, 910 F. Supp 491 (N.D. Ore. 1995). Those plaintiffs invoke the same rationale that Ogle does: good faith can only negate a subjective component of the claim, and if the underlying common law tort did not allow for a good faith defense, then a constitutional tort should not offer a good faith defense either. However, those plaintiffs are similarly misguided because the analysis of common law tort analogues was a part of the qualified immunity analysis, not the good faith analysis.[2] The qualified immunity analysis and good faith defense are separate; attempting to find a good faith defense rooted in a qualified immunity analysis is contrived. Qualified immunity is rooted in common law tort and policy rationales. *Duncan*, 844 F.2d at 1264. The good faith defense is derived from equality and fairness. *Wyatt*, 504 U.S. at 168.

For these reasons, it is irrelevant that the First Amendment violation lacks a subjective component. It would be manifestly unfair to grant qualified immunity to a public official who, following a state statute, violates a citizens' First Amendment rights when a similarly situated private actor would be exposed to liability. *See Nemo*, 910 F. Supp. at 499 (analyzing a private actor as "stepping into the shoes of a government agent" when relying upon a First Amendment ordinance). Thus, the equality and fairness rationales that underly the purpose of the good faith defense are at play here and, despite Ogle's claims to the contrary, the defense applies.

As for Ogle's second argument, this Court agrees with him that OCSEA, as a private entity, is not entitled to qualified immunity. *See Vector*, 76 F.3d 692 (1996). However, the unavailability of qualified immunity has no effect on the availability of OCSEA's good faith defense. *Nemo*, 910 F. Supp. at 498 ("private defendants might be entitled to a defense of good faith reliance upon a statute, even though such defendants cannot assert qualified immunity.").

Third, Ogle argues that OCSEA is masking qualified immunity as a good faith defense because OCSEA is asking that the good faith defense apply as a matter of law. In other words, Ogle argues that OCSEA is asking for an objective analysis which is reserved for qualified immunity and unavailable to OCSEA.

**\*9** Just because the good faith defense applies here as a matter of law does not change the fact that OCSEA's defense is rooted in good faith not qualified immunity. Ogle's argument ignores the reality that the two doctrines perform different functions: qualified immunity is immunity from suit, the good faith defense is a defense to liability. *See* Wyatt, 504 U.S. at 166 ("*Harlow* established an '*immunity from suit* rather than a mere defense to liability' ") (emphasis in original) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). OCSEA is not asking for immunity from suit, they are using a defense to protect them against liability. This Court is *not* performing a qualified immunity analysis rooted in traditional common law and the policy rationales for qualified immunity; nor is this Court granting OCSEA immunity from suit. Thus, Ogle's attempt to paint OCSEA's good faith defense as qualified immunity falters.

Fourth, Ogle argues that the good faith defense is not available to OCSEA because it is an entity, and if drawing a comparison to qualified immunity, qualified immunity is not available to municipalities. (Doc. 13, Response at 12–13). This argument is unpersuasive because, once again, Ogle confuses qualified immunity with the good faith defense. Had the Supreme Court found that private actors are entitled to qualified immunity then his argument would hold more weight. However, the Supreme Court found that qualified immunity is not available to private actors, but a good faith defense might be. The underlying rationales for qualified immunity and the good faith defense are not the same. Wyatt 504 U.S. at 168 ("[Qualified immunity] rationales are not transferable to private parties. Although principles of equality and fairness may suggest, as respondents argue, that private citizens ... should have some protection from liability, as do their government counterparts"). Because the good faith defense and qualified immunity are based on fundamentally different principles, comparing the availability of the good faith defense to the availability of qualified immunity is an exercise in futility. *See* Mooney, 372 F. Supp. 3d at 704-705 (discussing why the policy rationales underlying the unavailability of qualified immunity for municipalities are not applicable to the good faith defense for private entities). The principles that support the good faith defense for private individuals are equally applicable to private institutions. Thus, private entities that rely upon a presumptively valid state statute have protection from liability should that statute later turn out to be unconstitutional.[3]

Finally, Ogle argues that, even if a good faith defense is available, OCSEA was not acting in good faith because the Supreme Court hinted that it would overturn *Abood*, and OCSEA should have known that their conduct was unconstitutional from these overtures. (Doc. 13, Response at 13-18). Ogle's argument is problematic because it would require private parties to "[read] the tea leaves of Supreme Court dicta" and that "has never been a precondition to good faith reliance on

governing law." *Cook v. Brown*, 364 F. Supp. 3d 1184, 1192 (D. Ore. Feb. 28, 2019). As another court stated: "Any subjective belief [the union] could have had that [*Abood*] was wrongly decided and should be overturned would have amounted to telepathy." *Winner v. Rauner*, No. 15 CV 7213 2016 WL 7374258 *5 (N.D. Ill. 2016). In short, it is patently unfair to expect private actors to be able to predict the future of constitutional law. *See Danielson*, 340 F. Supp.3d at 1086 ("the Union Defendant should not be expected to have known that *Abood* was unconstitutional, because the Supreme Court had not yet so decided.").

**\*10** There are other concerns with Ogle's position. Notably, this Court believes that it would have a chilling effect on private actors. For if private actors can be liable for relying on then constitutionally valid state statutes, they may, due to a fear of future liability, refrain from acting. Even with some sign or hint from the Supreme Court that the state of constitutional law may change, it could have an adverse effect on the actions of private parties. For example, if OCSEA had stopped collecting fair share fees based on the Supreme Court's warnings, and the Supreme Court never returned to the issue, then OCSEA would have forgone constitutionally proper conduct out of a fear that constitutional law may change. This cannot be the rule.

Lastly, Ogle's position would undermine the role of the judiciary and place the burden of constitutional interpretation on private parties. *Carey*, 364 F. Supp. 3d at 1331 ("Plaintiff's approach would have the practical effect of destabilizing the role of the judiciary"). It is the judiciary's role to determine what is, and what is not, constitutional. *Marbury v. Madison*, 5 U.S. 137, 177 (1803). If OCSEA can be liable based on its own interpretation of the constitution, then this Court is essentially asking OCSEA to "become constitutional scholars tasked with deciding if they truly agree with the Supreme Court's reasoning to avoid future liability." *Carey*, 364 F. Supp. 3d at 1331. Again, this cannot be the rule.

Finally, Ogle argues that, even if the good faith defense applies in this case, Ogle is entitled to discovery because the OCSEA has provided no evidence of its state of mind showing good faith. OCSEA counters that reliance on a statute establishes good faith as a matter of law. This Court agrees with OCSEA.

Some support for Ogle's argument is found in caselaw because, typically, subjective states of mind are shown through discovery. *Vector*, 76 F.3d at 699 ("Any good faith defense must, however, be resolved on remand and not on this Rule 12 motion to dismiss."). *See also Duncan*, 844 F.2d at 1266 ("A good faith defense, on the other hand, is likely to be based in large part on the facts of the case, with the suit only being dismissed after trial, or on summary judgment if the defendant can show that there is no material dispute as to the facts"). However, it is, as a matter of law, reasonable to rely on a presumptively valid statute. *Wyatt*, 504 U.S. 158, 174 (1992) (J. Kennedy, concurring) ("there is support in the common law for the proposition that a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter

of law"). It would be unreasonable to expose OCSEA to discovery when discovery would not change the fact that OCSEA was simply following the existing law. As the court in *Danielson* stated:

> the Union Defendant should not be expected to have known that *Abood* was unconstitutional, because the Supreme Court had not yet so decided. Inviting discovery on the subjective anticipation of an unpredictable shift in the law undermines the importance of observing existing precedent and ignores the possibility that prevailing jurisprudential winds may shift. This is not a practical, sustainable or desirable model. The good faith defense should apply here as a matter of law.

340 F. Supp.3d at 1086. For these reasons, "no amount of discovery could show that the Union Defendant knew or should have known something that was not true." *Id.* at 1086-87.

For the reasons discussed above, this Court finds that the good faith defense for private actors is available to OCSEA as a matter of law in this case. Because OCSEA is entitled to the good faith defense, the Defendant's Motion as it relates to the claims for prospective relief is **GRANTED.**

**C. Plaintiff is Not Entitled to Nominal Damages**

*11 Lastly, Ogle argues that if he is not entitled to compensatory damages, then he is at least entitled to nominal damages so that his constitutional rights are observed. (Doc. 13, Response at 18). OCSEA counters that the good faith defense is a defense to liability and that they know of no similar case where nominal damages have been awarded in the absence of compensatory damages. (Doc. 14, Reply at 5-6 n.2). This Court agrees with OCSEA.

This Court also can find no case dealing with nominal damages pursuant to a non-union members' First Amendment rights following *Janus.* However, examining the principles underlying nominal damages leads this Court to the necessary outcome.

Nominal damages are awarded when a defendant is liable for some harm but the plaintiff cannot prove an actual injury. *See Farrar v. Hobby*, 506 U.S. 103, 103 (1992) ("petitioners were entitled to nominal damages under *Carey v. Piphus*, 435 U.S. 247, 266 (1978) because they were able to establish Hobby's liability for denial of procedural due process, but could not prove the actual injury necessary for a compensatory damages award."). Thus, for nominal damages to be available, a plaintiff must establish the defendant's liability. In the case at hand, there is no such finding of liability because the good faith defense acts to protect OCSEA from liability. *Wyatt*, 994 F.2d at 1118 ("private defendants sued on the basis of Lugar may be held liable for damages under

§ 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures, that is, if they either knew or should have known that the statute upon which they relied was unconstitutional."). Because OCSEA neither "knew [n]or should have known that the statute upon which they relied was unconstitutional" this Court cannot say that they are liable to Ogle. Thus, nominal damages are unavailable.

It is undisputed that OCSEA's prior practice of collecting mandatory fair share fees violated Ogle's First Amendment rights. Thus, it may seem contradictory that this Court will not recognize that violation through the award of nominal damages. However, nominal damages are not merely symbolic—they carry with them real implications. A party who is awarded nominal damages is considered a "prevailing party" under the law. See *Farrar*, 506 U.S. at 103. This designation comes with repercussions (for example, the availability of attorney's fees). *Id.* Thus, any vindication for the violation of Ogle's constitutional rights is not properly before this Court.

## IV. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED.** The Clerk shall remove Document 12 from the Court's pending motions list. The Clerk shall enter final judgment in favor of Defendants and **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2019 WL 3227936

Footnotes

1   The Northern District of Ohio is not the only district court to have considered this issue. A plethora of district courts have addressed this issue and have found that the plaintiffs either lacked standing or the case became moot post *Janus*. See *Babb v. California Teachers Association*, No. 218CV06793JLSDFM, 2019 WL 2022222 (C.D. Cal. May 8, 2019); *Sweeney v. Madigan*, 359 F. Supp. 3d 585 (N.D. Ill. 2019); *Hartnett v. Pennsylvania State Education Association*, No. 1:17-cv-100, 2019 WL 2160404 (M.D. Penn. 2019).

2   It is worth noting that even if this Court were required to draw a common law analogy, the good faith defense would still be available. The closest common law tort would be one with a dignitary component, such as abuse of process or defamation. See *Carey*, 364 F. Supp. 3d at 1230; *Danielson*, F. Supp. 3d at 1086. Therefore, the good faith reliance by OCSEA on a state statute would negate the underlying subjective component of the tort.

3   For argument purposes, even if the good faith defense was not available to private entities, the end result would not change. Municipalities can only be held liable if they are "deliberately indifferent" to the constitutional rights of its citizens. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). If a private entity is acting pursuant to a presumptively valid state statute, it cannot be said that they are deliberately indifferent to the constitutional rights of citizens. For that reason, even accepting Ogle's argument that a good faith defense is not available to an entity, this Court could not say that OCSEA was deliberately indifferent because they were acting pursuant to a valid state statute.

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.