UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID SEIDEMANN and BRUCE MARTIN,
*individually and on behalf of all others similarly
situated*,

                          Plaintiffs,

                          -v.-

PROFESSIONAL STAFF CONGRESS LOCAL
2334; FACULTY ASSOCIATION OF SUFFOLK
COUNTY COMMUNITY COLLEGE; UNITED
UNIVERSITY PROFESSIONS, FARMINGDALE
STATE COLLEGE CHAPTER; NATIONAL
EDUCATION ASSOCIATION OF THE UNITED
STATES; AMERICAN FEDERATION OF
TEACHERS; AMERICAN FEDERATION OF
LABOR AND CONGRESS OF INDUSTRIAL
ORGANIZATIONS; AMERICAN ASSOCIATION
OF UNIVERSITY PROFESSORS COLLECTIVE
BARGAINING CONGRESS; and NEW YORK
STATE UNITED TEACHERS,

                          Defendants.

18 Civ. 9778 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

    Plaintiffs David Seidemann and Bruce Martin bring this putative class

action against Defendants Professional Staff Congress Local 2334 ("PSC"),

American Federation of Teachers ("AFT"), American Federation of Labor and

Congress of Industrial Organizations ("AFL-CIO"), American Association of

University Professors Collective Bargaining Congress ("AAUPCBC"), New York

State United Teachers ("NYSUT"), National Education Association of the United

States ("NEA"), Faculty Association of Suffolk County Community College

("FASCCC"), and United University Professions, Farmingdale State College

Chapter ("UUP").  Prior to the Supreme Court's decision in *Janus* v. *American*

*Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), Plaintiffs were required to pay agency shop fees to the unions that represented their respective places of employment, in compliance with New York Civil Service Law § 208 and as authorized by *Abood* v. *Detroit Board of Education*, 431 U.S. 209 (1977). Plaintiffs now allege that they are entitled to the return of all agency shop fees previously paid, raising constitutional claims under 42 U.S.C. § 1983 and common-law claims for conversion and unjust enrichment. Additionally, Plaintiffs seek a declaratory judgment stating that both compulsory agency shop fees and New York State laws that authorize them are unconstitutional, as well as an injunction against the collection of those fees. Defendants move to dismiss Plaintiffs' suit in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth in the remainder of this Opinion, Defendants' motion to dismiss is granted.

## BACKGROUND[1]

### A.    Legal Background

Before stating the facts of this case, it is necessary to understand the legal backdrop to Plaintiffs' claims. In 1977, the Supreme Court addressed

---

[1]     The facts contained in this Opinion are drawn primarily from Plaintiffs' Amended Complaint, which is the operative pleading in this case and is referred to in this Opinion as the "Amended Complaint" or "Am. Compl." (Am. Compl. (Dkt. #65)). The Court has not considered the declaration submitted by Plaintiff Seidemann as part of his submission in opposition to Defendants' motion to dismiss (Dkt. #93), as Seidemann has offered no legal basis for the Court to do so. *See Marolla* v. *Devlyn Optical LLC*, No. 18 Civ. 7395 (VSB), 2019 WL 4194330, at *4 n.5 (S.D.N.Y. Sept. 3, 2019) (citing *Goodman* v. *Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 381 (S.D.N.Y. 2012) ("Plaintiff's additional factual assertions, provided in his opposition papers and affidavit, are inadmissible."); *Wachtel* v. *Nat'l R.R. Passenger Corp.*, No. 11 Civ. 613 (PAC), 2012 WL 292352, at *2 (S.D.N.Y. Jan. 30, 2012) ("While Plaintiff attached an affidavit to his opposition brief in an attempt to support his argument, the Court cannot consider affidavits in ruling on a motion to dismiss.")); *see also Troy* v. *City of New York*, No. 13

whether unions could compel non-members that they nevertheless represented to pay service fees pursuant to an "agency shop" clause; such fees are known colloquially as agency shop fees. *See Abood* v. *Detroit Bd. of Ed.*, 431 U.S. 209, 212 (1977). In a unanimous opinion, the Supreme Court held that such fees were constitutional insofar as they were spent in advancement of the union's duties as collective-bargaining representative, but that they could not be spent on political or ideological causes over the objection of the represented employee. *See id.* at 235-36. This remained the law of the land for decades, albeit with sporadic warnings in *dicta* about its potential infirmity, *see, e.g., Harris* v. *Quinn*, 573 U.S. 616, 635-38 (2014), and states such as New York enacted statutes in reliance on *Abood*'s holding, *see* N.Y. Civ. Serv. L. § 208(3) (McKinney 2019). In June 27, 2018, however, the Court expressly overruled *Abood* and declared all agency shop fees in the public employment setting to be

---

Civ. 5082 (AJN), 2014 WL 4804479, at *1 (S.D.N.Y. Sept. 25, 2014) ("[T]he Court does not rely on factual assertions made for the first time in Plaintiff's opposition brief ... as it is axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss." (internal citations and quotation marks omitted)), *aff'd*, 614 F. App'x 32 (2d Cir. 2015) (summary order).

The Court also draws jurisdictional facts from the exhibits attached to the Declaration of Deborah E. Bell in Support of Defendants' Motion to Dismiss the Amended Complaint, referred to as the "Bell Decl." (Dkt. #89); the Declaration of Tina M. George in Support of Defendants' Motion to Dismiss the Amended Complaint, referred to as the "George Decl." (Dkt. #90); and the Declaration of Peter N. DiGregorio in Support of Defendants' Motion to Dismiss the Amended Complaint, referred to as the "DiGregorio Decl." (Dkt. #91). Defendants are permitted to present extrinsic evidence showing lack of subject matter jurisdiction on a motion brought under Federal Rule of Civil Procedure 12(b)(1). *See Carter* v. *HealthPort Technologies, LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

For ease of reference, the Court refers to the parties' briefing as follows: Defendants' opening brief as "Def. Br." (Dkt. #83); Plaintiffs' opposition brief as "Pl. Opp." (Dkt. #92); and Defendants' reply brief as "Def. Reply" (Dkt. #94).

violative of the First Amendment. *See Janus* v. *Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2459-60 (2018).

## B.    Factual Background

At all relevant times, Plaintiffs were college professors at public educational institutions in New York. (Am. Compl. ¶¶ 1-2). David Seidemann was a professor at the City University of New York ("CUNY") (*id.* at ¶ 1), while Bruce Martin was a professor at both Suffolk County Community College ("SCCC") and Farmingdale State College ("FSC") (*id.* at ¶ 2). Both plaintiffs thus qualified as "public employees" for purposes of N.Y. Civ. Serv. Law § 208. As a faculty member at CUNY, Seidemann was represented by Defendant PSC and thus was required to pay agency shop fees to PSC, portions of which were then forwarded to Defendants AFT, AFL-CIO, AAUPCBC, and NYSUT. (*Id.* at ¶¶ 1, 3). Of note, however, Seidemann was never a member of PSC and never affirmatively consented to pay agency shop fees. (*Id.* at ¶ 1).

Martin, for his part, was represented by Defendant FASCCC in his capacity as a professor at SCCC and by Defendant UUP in his capacity as a professor at FSC, and thus was required to pay agency shop fees to both organizations. (Am. Compl. ¶¶ 2, 4-5). Portions of these agency shop fees were then forwarded to Defendants AFT, AFL-CIO, NEA, and NYSUT. (*Id.* at ¶¶ 4-5). Like Seidemann, Martin was never a member of either FASCCC or UPP, and never affirmatively consented to pay agency shop fees. (*Id.* at ¶ 2). All agency shop fees were paid via a direct deduction from Plaintiffs' paychecks, as authorized by N.Y. Civ. Serv. Law § 208(3). (*Id.* at ¶ 13). Neither Seidemann

nor Martin alleges that he has been required to pay agency shop fees since the Supreme Court's decision in *Janus*.

## C.     Procedural Background

Seidemann filed his initial complaint in this action on October 24, 2018, several months after *Janus* was issued; initially, he named AAUPCBC, AFL-CIO, AFT, NYSUT, and PSC as Defendants. (Dkt. #1). On January 11, 2019, Defendants asked the Court for leave to file a motion to dismiss (Dkt. #46), to which Seidemann responded on January 16, 2019 (Dkt. #47). The parties appeared before the Court for a pre-motion conference on January 31, 2019, during which time the Court set a briefing schedule for the proposed motion to dismiss. (Minute Entry of January 31, 2019). The Court then adjourned that schedule after granting Seidemann's request of March 20, 2019, to file an amended class action complaint. (Dkt. #60, 62).

Seidemann filed an Amended Complaint, joined by Martin, on April 12, 2019, in which the pair added FASCCC, NEA, and UUP as Defendants. (Dkt. #65). Defendants filed their motion to dismiss, along with an accompanying memorandum and numerous declarations, on May 24, 2019. (Dkt. #82). Plaintiffs filed a brief in opposition, along with a declaration, on June 21, 2019. (Dkt. #93). Defendants filed their reply brief on July 12, 2019. (Dkt. #94).

**DISCUSSION**[2]

**A. Applicable Law**

**1. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1)**

Defendants challenge Plaintiffs' request for an injunction and a declaratory judgment as non-justiciable for reasons of mootness. (*See* Def. Br. 1). The Court analyzes these claims for equitable relief under the rubric of Rule 12(b)(1). *See Platinum-Montaur Life Scis. LLC* v. *Navidea Biopharmaceuticals, Inc.*, No. 17 Civ. 9591 (VEC), 2018 WL 5650006, at *2 (S.D.N.Y. Oct. 31, 2018) (citing *All. For Envtl. Renewal, Inc.* v. *Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006)) ("As the Second Circuit has explained … standing challenges are jurisdictional questions that are properly

---

[2] The Court notes that while it is, to its knowledge, the first court in this District to hear claims regarding whether non-union-member public employees are entitled to the refund of their agency shop fees, substantially identical claims have been brought, and disposed of, across the country. *See, e.g., Ogle* v. *Ohio Civ. Serv. Emps. Ass'n, AFSCME, Local 11*, 397 F. Supp. 3d 1076 (S.D. Ohio 2019); *Babb* v. *Cal. Teachers Ass'n*, 378 F. Supp. 3d 857 (C.D. Cal. 2019); *Wholean* v. *CSEA SEIU Local 2001*, No. 18 Civ. 1008 (WWE), 2019 WL 1873021 (D. Conn. Apr. 26, 2019); *Akers* v. *Md. State Educators Ass'n*, 376 F. Supp. 3d 563 (D. Md. 2019); *Bermudez* v. *Serv. Emps. Int'l Union, Local 521*, No. 18 Civ. 4312 (VC), 2019 WL 1615414 (N.D. Cal. Apr. 16, 2019); *Mooney* v. *Ill. Educ. Ass'n*, 372 F. Supp. 3d 690 (C.D. Ill. 2019), *aff'd*, 942 F.3d 368 (7th Cir. 2019); *Lee* v. *Ohio Educ. Ass'n*, 366 F. Supp. 3d 980 (N.D. Ohio 2019); *Hough* v. *SEIU Local 521*, No. 18 Civ. 4902 (VC), 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019); *Janus* v. *Am. Fed'n of State, Cty., & Mun. Emps., Council 31, AFL-CIO*, No. 15 Civ. 1235 (RWG), 2019 WL 1239780 (N.D. Ill. Mar. 18, 2019); *Carey* v. *Inslee*, 364 F. Supp. 3d 1220 (W.D. Wash. 2019); *Crockett* v. *NEA-Alaska*, 367 F. Supp. 3d 996 (D. Alaska 2019); *Cook* v. *Brown*, 364 F. Supp. 3d 1184 (D. Or. 2019); *Danielson* v. *Am. Fed'n of State, Cty., & Mun. Emps., Council 28, AFL-CIO*, 340 F. Supp. 3d 1083 (W.D. Wash. 2018). Although there are slight variations between and among the above cases, their underlying facts and legal arguments largely mirror the ones before this Court, and the respective district courts have offered thoughtful and comprehensive analyses of these arguments. Although the Court is not bound by any of the other district court opinions and has conducted its own independent analysis, that analysis is shaped by the persuasive reasoning of these other courts.

6

resolved under Rule 12(b)(1)."), *vacated and remanded on other grounds*, 943 F.3d 613 (2d Cir. 2019).

Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States,* 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions. *See Carter* v. *HealthPort Technologies, LLC,* 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. A plaintiff opposing such a motion bears "no evidentiary burden." *Id.* Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that" establish subject matter jurisdiction. *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). And to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Carter*, 822 F.3d at 57. "In opposition to such a motion, [plaintiffs] must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz*, 872 F.3d at 119 (internal citations and quotations omitted). If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to subject matter jurisdiction." *Carter*, 822 F.3d at 57.

## 2. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Defendants seek to dismiss the remainder of the Amended Complaint pursuant to Rule 12(b)(6). When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While

*Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B.     Analysis**

Defendants advance three principal arguments for dismissal: (i) Plaintiffs' claims for prospective relief are moot due to Defendants' undisputed compliance with *Janus* since June 27, 2018; (ii) Plaintiffs' claims for a refund under 42 U.S.C. § 1983 fail as a matter of law because Defendants can rely on the good-faith defense; and (iii) Plaintiffs' common-law claims also fail as a matter of law on various grounds. (*See* Def. Br. 1-3). The Court will address each argument in turn.

1. **The Court Lacks Subject Matter Jurisdiction over Plaintiffs'
Claims for a Declaratory Judgment and Injunctive Relief**[3]

Federal courts are courts of limited jurisdiction, "and lack the power to

disregard such limits as have been imposed by the Constitution or Congress."

*Platinum-Montaur Life Scis., LLC* v. *Navidea Biopharmaceuticals, Inc.*, 943 F.3d

613, 616 (2d Cir. 2019). Article III of the Constitution "limits the jurisdiction of

federal courts to 'Cases' and 'Controversies,'" thereby "restrict[ing] the authority

of federal courts to resolving 'the legal rights of litigants in actual

controversies.'" *Genesis Healthcare Corp.* v. *Symczyk*, 569 U.S. 66, 71 (2013)

(internal quotation marks omitted) (quoting *Valley Forge Christian College* v.

*Americans for Separation of Church and State, Inc.*, 454 U.S. 471 (1982)). The

"Case" and "Controversy" requirement places the burden on "those who invoke

the power of a federal court to demonstrate standing — a 'personal injury fairly

traceable to the defendant's allegedly unlawful conduct and likely to be

redressed by the requested relief.'" *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 90

(2013). A case ceases being a "Case" or "Controversy" — or, in other words,

becomes moot — "when the issues presented are no longer 'live' or the parties

lack a legally cognizable interest in the outcome." *Id.* at 91. This is the case

---

[3] At the outset, the Court points out that it is of no moment that Plaintiffs have styled
their claim as a putative class action if they themselves cannot demonstrate that they
have standing to bring this case. "[N]amed class plaintiffs must allege and show that
they *personally* have been injured, not that the injury has been suffered by other,
unidentified members of the class to which they belong and which they purport to
represent." *Hidalgo* v. *Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285,
292 (S.D.N.Y. 2015) (citing *Central States SE & SW Areas Health & Welfare Fund* v.
*Merck-Medco Managed Care, LLC*, 443 F.3d 181, 199 (2d Cir. 2005)).

"[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit." *Id.*

Starting with Plaintiffs' pleadings, the Court observes that at no point do Plaintiffs allege that Defendants have failed to comply with the Supreme Court's decision in *Janus* or that Plaintiffs have paid agency shop fees following that decision. (*See* Am. Compl. ¶¶ 1-2 (stating only that Plaintiffs were required to pay agency shop fees "prior to *Janus*")). Indeed, the only allegation of continuing harm is a conclusory claim that Defendants "continue to violate Plaintiffs' First Amendment rights to free speech and association." (*Id.* at ¶ 33). Thus, given the absence of any plausible allegation of present or future harm, Plaintiffs lack standing on the face of the Amended Complaint alone. *See O'Neill* v. *Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 526 (S.D.N.Y. 2018) (noting that "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury" (quoting *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016))).

This finding is only buttressed by Defendants' additional evidence — which, as noted, the Court may properly consider on a Rule 12(b)(1) motion. *See Carter*, 822 F.3d at 57. Specifically, Defendants have presented uncontroverted evidence that all relevant entities — the Defendant Unions, the Plaintiffs' employers, and the New York State Comptroller's Office — immediately complied with *Janus* by ceasing the deduction of agency shop fees from Plaintiffs' paychecks and reimbursing to Plaintiffs any fees that might have been deducted after June 27, 2018. (*See* Bell Decl. ¶¶ 13-14, 16-17, 20-

21, 24; George Decl. ¶¶ 15-16, 18-19, 22; DiGregorio Decl. ¶¶ 18-21, 24-25).

Moreover, Defendants PSC, FASCCC, and UUP have affirmed their conviction

that compelled agency shop fees in the public sector are no longer

constitutional in the wake of *Janus* (*see* Bell Decl. ¶ 27; George Decl. ¶ 27;

DiGregorio Decl. ¶ 22), and that they have no intention of, and in most cases

are incapable of, resuming the deduction of agency shop fees from Plaintiffs'

paychecks (*see* Bell Decl. ¶¶ 30-31; George Decl. ¶¶ 22, 29; DiGregorio

Decl. ¶ 23; *see also* Bell Decl., Ex. 3 (providing Payroll Bulletin No. 1660 from

the New York State Comptroller's Office, which notifies of the cessation of all

compelled agency shop fees in light of *Janus*)).  On this record, the Court

cannot discern a basis for Plaintiffs to assert Article III injury at the time they

filed this suit, or, in the alternative, why their claims for prospective relief are

not now moot.[4]  *See Berman* v. *N.Y. State Pub. Emp. Fed'n*, No. 16 Civ. 204

(DLI) (RLM), 2019 WL 1472582, at *3 (E.D.N.Y. Mar. 31, 2019) (finding that

claims based on pre-*Janus* conduct were moot given Payroll Bulletin No. 1660

and defendants' acknowledgement of the illegality of compelled agency shop

fees); *Lamberty* v. *Conn. State Police Union*, No. 15 Civ. 378 (VAB), 2018 WL

5115559, at *9 (D. Conn. Oct. 19, 2018) (finding that claims based on pre-

---

[4]     The Court briefly acknowledges that, insofar as the Court dismisses Plaintiffs' claims for
prospective relief based on a lack of standing as opposed to mootness, its reasoning
differs slightly from the other district courts that have heard substantially similar
claims. *See supra* at 6 n.2.  The Court believes that the other courts' focus on mootness
is in part due to the timing of their respective actions — some were filed prior to
*Janus* — and in part due to the parties' briefing focusing on mootness.  Indeed,
Defendants here primarily argue for dismissal based on mootness.  (*See* Def. Br. 9).
However, despite the slightly different analytical path, the Court nonetheless finds the
prior district court opinions helpful and cites to them where appropriate.

12

*Janus* conduct were moot where "none of the Defendants in this case are disputing that the law of the land has changed, or are trying to collect agency fees").

Plaintiffs raise three counter-arguments, all of which are easily rebutted. *First*, Plaintiffs claim that the "voluntary cessation" exception to the mootness doctrine should apply here. (*See* Pl. Opp. 2-3 n.6). The Court does not believe that mootness is the correct analytical framework for this situation, given that Plaintiffs have failed to plead facts or to present evidence demonstrating that a controversy existed when they brought suit. *See Ogle* v. *Ohio Civ. Serv. Emps. Ass'n, AFSCME, Local 11*, 397 F. Supp. 3d 1076, 1085 (S.D. Ohio 2019) (explaining that mootness applies when an actual controversy existed at the outset of the suit but later ceased to exist, while standing applies when no controversy exists at the outset). Although mootness and standing are linked, *see Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 170 (2000) (discussing the Supreme Court's "repeated description of mootness as 'the doctrine of standing set in a time frame'"), they differ significantly in that they entail different burdens, *see Mhany Management, Inc.* v. *County of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016). "The burden of establishing standing falls on the plaintiff," but "the burden of showing mootness … falls on a defendant." *Mhany Mgmt.*, 819 F.3d at 603.

Plaintiffs here bear the burden of proving that they had standing to request prospective relief at the outset, but the only facts they allege are that they were subjected to unlawful conduct prior to *Janus*. (*See* Am. Compl. ¶¶ 1-

2). And as noted, Plaintiffs cannot rely on that prior unlawful conduct to establish standing for prospective relief. *See Shain* v. *Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (explaining that plaintiff "cannot rely on past injury to satisfy the injury[-in-fact] requirement [of standing] but must show a likelihood that he will be injured in the future" (internal ellipsis removed) (quoting *Deshawn E. by Charlotte E.* v. *Safir*, 156 F.3d 340, 344 (2d Cir. 1998))). Thus, Plaintiffs have failed to establish that they have standing to pursue prospective relief, whether it be injunctive or declaratory in nature. The Court need not discuss the "voluntary cessation" doctrine, as mootness is not at issue here. Even if it were, Plaintiffs' claims would be unequivocally moot. *See Wholean* v. *CSEA SEIU Local 2001*, No. 18 Civ. 1008 (WWE), 2019 WL 1873021, at *3 (D. Conn. Apr. 26, 2019) (finding plaintiffs' claims moot on substantially identical facts because "[i] the Supreme Court has already determined the issue, and [ii] defendants have demonstrated that collection of such fees has ceased and is unlikely to recur").

*Second*, Plaintiffs argue that because *Janus* did not directly address the constitutionality of N.Y. Civ. Serv. Law § 208, the Court is still obligated to declare that statute unconstitutional. (*See* Pl. Opp. 3 n.7). Plaintiffs specifically analogize to *Jernigan* v. *Crane* (*see id.*), in which the Eighth Circuit held that the Supreme Court's decision in *Obergefell* v. *Hodges*, 135 S. Ct. 2584 (2015), did not moot a suit challenging Arkansas's laws barring same-sex marriage. *See* 796 F.3d 976, 979-80 (8th Cir. 2015). Again, this is an argument sounding on mootness, and the Court has already determined that

mootness is not at play here because of Plaintiffs' antecedent failure to establish standing. Regardless, *Jernigan* is inapposite because the Eighth Circuit there noted that *Obergefell* specifically invalidated only the state laws challenged by the petitioners. *See Jernigan*, 796 F.3d at 979 (quoting *Obergefell*, 135 S. Ct. at 2591). *Janus*, by contrast, had a much broader holding: "States and public-sector unions may no longer extract agency fees from nonconsenting employees." *Janus*, 138 S. Ct. at 2486. This broad holding covers all state laws authorizing the extraction of agency fees from nonconsenting employees, including New York's statute. *See Diamond* v. *Penn. State Educ. Ass'n*, 399 F. Supp. 3d 361, 388 (W.D. Pa. 2019) (explaining that *Obergefell* was written narrowly to hold invalid particular states' laws, while "*Janus* broadly overruled *Abood*," "moot[ing] controversies in ways *Obergefell*'s narrow holding did not").

*Third*, Plaintiffs cite *United States Department of Treasury, Bureau of Alcohol, Tobacco and Firearms* v. *Galioto*, 477 U.S. 556 (1986), for the proposition that the New York legislature's failure to repeal N.Y. Civ. Serv. Law § 208 provides Plaintiffs with standing to obtain injunctive relief. (*See* Pl. Opp. 3 n.9). Plaintiffs, however, have flipped the earlier case on its head. The *Galioto* court held that the plaintiff's case had become moot because Congress had amended the problematic statute. *See Galioto*, 477 U.S. at 560-61. It did not hold the inverse — that a case remains live so long as the legislature retains a problematic statute on the books. As has already been noted above and by numerous other district courts, *Janus* fundamentally changed the law

of the land, *see, e.g., Diamond*, 399 F. Supp. 3d at 386-87; *Lamberty*, 2018 WL 5115559, at *9, and by virtue of the Supremacy Clause, *Janus*'s broad holding preempts any state law to the contrary, *see* U.S. Const. art. VI; *Cooper* v. *Aaron*, 358 U.S. 1, 18 (1958).  Neither Defendants nor any agent of New York State has argued to the contrary.  Thus, in lieu of an actual dispute, the Court is back where it started: Plaintiffs lack standing.  *See Symczyk*, 569 U.S. at 71.

### 2. Plaintiffs Fail to State a Claim Under § 1983

Plaintiffs seek retrospective, and not merely prospective, relief.  In this regard, they bring claims under 42 U.S.C. § 1983, alleging that Defendants violated their First Amendment rights to free speech and association, and demanding a refund "of all agency shop fees unlawfully withheld or collected from Plaintiffs."  (Am. Compl. ¶¶ 33 & Ex. E).  Defendants argue (*see* Def. Br. 13), and Plaintiff disputes (*see* Pl. Opp. 8-9), that the good-faith defense applies in this case and bars Plaintiffs' claims under § 1983.

Section 1983 "provides a cause of action against persons who, acting under color of state law, subject individuals to the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Davis* v. *N.Y.C. Housing Auth.*, 379 F. Supp. 3d 237, 244 (S.D.N.Y. 2019) (quoting 42 U.S.C. § 1983).  Defendants do not concede that they acted under color of state law or qualify as state actors (*see* Def. Br. 13 n.3), but the Court will conduct its analysis based on the assumption that Defendants indeed fall within § 1983's ambit, albeit without deciding the question.

16

Therefore, the primary question is whether Defendants are correct about the application of the good-faith defense.[5]

The good-faith defense — a defense that private actors can raise in response to § 1983 claims — has a murky history that is worth exploring. In *Lugar* v. *Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 (1982), the Supreme Court held that private actors could be held liable under § 1983. However, the Court chose not to address whether a defense should be available for "private individuals who innocently make use of seemingly valid state laws" that are "subsequently held to be unconstitutional," as is available for government actors through the doctrines of good faith and qualified immunity. *See Lugar*, 457 U.S. at 942 n.23. The Court revisited the subject in *Wyatt* v. *Cole*, 504 U.S. 158, 158 (1992), making clear that private actors are not entitled to the qualified immunity that the Court described in *Harlow* v. *Fitzgerald*, 457 U.S. 800 (1982). Even then, the Court did "not foreclose the possibility that private defendants faced with § 1983 liability ... could be entitled to an affirmative defense based on good faith." *Wyatt*, 504 U.S. at 169. Indeed, *Wyatt* recognized that "principles of equality and fairness may suggest ... that private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid should have some protection from liability." *Id.* at 168. The Court merely held that qualified immunity would not offer that protection. *See id.*

---

[5]     In analyzing Plaintiffs' § 1983 claims, the Court also assumes without deciding that *Janus* applies retroactively.

Since *Wyatt*, numerous Circuit Courts of Appeals have stepped into the breach left by the Supreme Court and recognized the existence of a good-faith defense for private actors in § 1983 cases. *See, e.g., Clement* v. *City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008) (holding that private defendants may assert a good-faith defense against § 1983 cases); *accord Vector Research, Inc.* v. *Howard & Howard Attorneys P.C.*, 76 F.3d 692, 699 (6th Cir. 1996); *Jordan* v. *Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1276-77 (3d Cir. 1994); *Wyatt* v. *Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993). More importantly, the Second Circuit has recognized the good-faith defense, *see Pinsky* v. *Duncan*, 79 F.3d 306, 311-13 (2d Cir. 1996), and has reaffirmed the existence of that defense (albeit in a summary order) in circumstances remarkably analogous to the ones presently before the Court, *see Jarvis* v. *Cuomo*, 660 F. App'x 72, 75 (2d Cir. 2016) (summary order) (upholding the application of the good-faith defense against claims that plaintiffs were owed refunds of agency shop fees paid prior to the Supreme Court's decision in *Harris*). Plaintiffs have offered no compelling reason why this Court should ignore the Second Circuit, as well as the thoughtful opinions of the other district courts that have heard essentially the same claim. *See, e.g., Babb* v. *Cal. Teachers Ass'n*, 378 F. Supp. 3d 857, 872 (C.D. Cal. 2019) (collecting cases recognizing existence of good-faith defense on substantially identical facts).[6] This Court joins these courts in finding that a good-faith defense exists under these circumstances.

---

[6] Plaintiffs argue that the Supreme Court's decision in *Filarsky* v. *Delia*, 566 U.S. 377 (2012), negates the need for the good-faith defense (*see* Pl. Opp. 10-11), but *Filarsky* does not apply. *Filarsky* merely held that a private individual may obtain the protection

Plaintiffs raise numerous arguments as to why, even if a good-faith defense exists for private actors in § 1983 cases, it would be inapplicable under these circumstances.  In particular, Plaintiffs argue that: (i) the good-faith defense is inapplicable because the most analogous common-law tort here is conversion, to which good faith is not a defense (*see* Pl. Opp. 11-12); (ii) the good-faith defense only applies to individuals, not entities (*see id.* at 15); (iii) the good-faith defense is limited to individuals fulfilling a governmental function (*see id.* at 16); (iv) the good-faith defense is inapplicable because, under the declaratory theory of law, Defendants cannot rely on *Abood* (*see id.* at 7-8); (v) the good-faith defense is inapplicable because Plaintiffs seek equitable relief additional to monetary damages (*see id.* at 8); (vi) Plaintiffs seek the return of unconstitutionally taken property (*see id.*); (vii) Defendants cannot establish that they acted in good faith (*see id.* at 16-20); and (viii) it is inappropriate to make a finding of good faith at this stage of litigation (*see id.* at 20-21).  The Court addresses, and rejects, each of these arguments in the remainder of this section.

### a.  Plaintiffs Misperceive the Common-Law Tort Analogue

Plaintiffs rely on the Fifth Circuit's decision on remand in *Wyatt* and on *Pierson* v. *Ray*, 386 U.S. 547 (1967), for the proposition that application of the good-faith defense requires the court to determine the most closely analogous

---

of qualified immunity when they are essentially working as an adjunct to the government.  *See* 566 U.S. at 393-94.  It does not address whether private actors, working independently of the government, may rely in good faith on seemingly valid state laws.

common-law tort to the alleged offense, and then determine whether good faith was a defense to that tort in 1871, the year § 1983 was enacted. (*See* Pl. Opp. 11-12). Several district courts, on the other hand, have eschewed such analyses. *See Mooney* v. *Ill. Educ. Ass'n*, 372 F. Supp. 3d 690, 703 (C.D. Ill. 2019) (holding that reliance on the good-faith defense does not require a determination of the most analogous common-law tort); *see also Babb*, 378 F. Supp. 3d at 873 (explaining that Ninth Circuit precedent "gives no indication that courts must analyze a common law analogue to apply the good-faith defense"). For its part, the Court does not find either *Pierson* or the Fifth Circuit's remand decision in *Wyatt* to be particularly helpful as guides, given that the former predates the Supreme Court's landmark decisions in *Lugar*, *Harlow*, and *Wyatt*, and is concerned with defenses available to state actors, *see Pierson*, 386 U.S. at 556-57, while the latter is from a different Circuit. However, the Court does consider the Second Circuit's handling of the question, principally in *Pinsky* and *Jarvis.* Unfortunately, even the guidance from the Circuit is unclear: while *Pinsky* expressly engaged in the exercise of identifying the most closely analogous tort, *see* 79 F.3d at 312, *Jarvis* did not comment on the need for the analysis one way or the other, *see* 660 F. App'x at 75. The wisest course is to follow the clearer authority, and so the Court agrees with Plaintiffs that it is appropriate to engage in an analysis of the most closely analogous tort when deciding the applicability of the good-faith defense.

Where the Court parts company with Plaintiffs is on the results of that analysis. Plaintiffs argue that the most closely analogous common-law tort in

this case is conversion. (*See* Pl. Opp. 12). Conversion occurs "when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito* v. *N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006). In addition, Plaintiff indirectly argues that because intent, or scienter, is not an element of conversion, good faith has not been in the past and cannot be now a defense to conversion. (*See* Pl. Opp. 12 n.63-66). Plaintiff's argument doubly fails. *First*, the Second Circuit held in *Jarvis* that it is irrelevant whether the underlying tort contains a scienter element. *See* 660 F. App'x at 75 (holding that the specific elements of the underlying tort are irrelevant because "affirmative defenses [like the good-faith defense] need not relate to or rebut specific elements of an underlying claim").

*Second*, even if the Court were to disregard *Jarvis* and accept that a scienter element is needed for the good-faith defense to apply, the defense would still apply here because conversion is not, in fact, the most closely analogous common-law tort. As other district courts have noted, "Plaintiffs' First Amendment claim turns not upon the Union Defendants' receipt of Plaintiffs' property, but upon the dignitary harm resulting from being compelled to support speech with which they disagree." *Babb*, 378 F. Supp. 3d at 873. Indeed, Defendants note that Plaintiffs' core injury stems from "Defendants' use of governmental process, § 208(3), to violate their First Amendment rights." (*See* Def. Br. 16). This injury does not mirror conversion; it mirrors abuse of process. *See Dowd* v. *DeMarco*, 314 F. Supp. 3d 576, 585

(S.D.N.Y. 2018) ("[T]he gist of abuse of process is the improper use of process after it is regularly issued." (emphasis removed) (quoting *Curiano* v. *Suozzi*, 63 N.Y.2d 113, 116 (1984))); *see also Wyatt*, 504 U.S. at 164 (describing abuse of process as a "cause[] of action against private defendants for unjustified harm arising out of the misuse of governmental processes").  Other district courts have likewise found abuse of process to be an apt analogy for Plaintiffs' harm.  *See, e.g., Diamond*, 399 F. Supp. 3d at 398; *Babb*, 378 F. Supp. 3d at 873; *Carey* v. *Inslee*, 364 F. Supp. 3d 1220, 1230 (W.D. Wash. 2019); *Cook* v. *Brown*, 364 F. Supp. 3d 1184, 1191-92 (D. Or. 2019).  Because intent is an element of abuse of process under New York law, *see Gilman* v. *Marsh & McLennan Cos., Inc.*, 868 F. Supp. 2d 118, 131 (S.D.N.Y. 2012), the good-faith defense applies even under Plaintiffs' preferred rules of analysis.

> **b.     The Good-Faith Defense Applies to Both Individuals and Entities**

Plaintiffs next contend, in reliance on *Owen* v. *City of Independence*, 445 U.S. 622 (1980), that the good-faith defense only applies to individuals, and cannot be raised by entities.  (*See* Pl. Opp. 15).  However, Plaintiffs' reliance on *Owen* is faulty.  As Defendants note (*see* Def. Br. 19), *Owen* discusses whether municipalities are entitled to qualified immunity (and discusses such immunity prior to the Supreme Court's retooling of the entire qualified immunity doctrine in *Harlow*), *see* 445 U.S. at 638.  *Owen* says nothing about the good-faith defense as discussed in *Wyatt* and then applied by numerous circuit courts, including the Second Circuit.  *See, e.g., Jarvis*, 660 F. App'x at 75-76 (finding that defendant union was entitled to good-faith defense); *Clement*, 518 F.3d at

1096-97 (finding that private towing company was entitled to good-faith defense); *Vector Research*, 76 F.3d at 699 (finding law firm could raise good-faith defense); *Jordan*, 20 F.3d at 1276-77 (same). Moreover, as the *Mooney* court aptly explained, the good-faith defense and qualified immunity are not coterminous, and the rationales motivating the application of qualified immunity — and its application to municipalities — do not apply in the context of the good-faith defense and private actors. *See* 372 F. Supp. 3d at 704-05. Therefore, the Court does not accept Plaintiffs' proposed limitation on the good-faith defense.

### c. The Good-Faith Defense Is Not Limited to Governmental Functions

Plaintiffs rely again on *Filarsky* v. *Delia*, 566 U.S. 377 (2012), this time for the proposition that the good-faith defense should be limited to actions fulfilling a governmental function. (*See* Pl. Opp. 16). Not only do Plaintiffs provide no support for such a limitation in any prior application of the good-faith defense, but *Filarsky* actually argues against Plaintiffs' position. As already noted, the *Filarsky* court held that private individuals acting in a governmental capacity are entitled to qualified immunity. *See* 566 U.S. at 393-94. If such individuals are already protected by qualified immunity, why should they also need a good-faith defense? Such an interpretation of either *Filarsky* or the good-faith defense would make the defense redundant. The Court accordingly rejects such an interpretation.

### d. The Declaratory Theory of Law Does Not Foreclose the Good-Faith Defense

Undeterred, Plaintiffs next argue that under the "declaratory theory of law," Defendants cannot rely on N.Y. Civ. Serv. Law § 208 as a defense for their unconstitutional conduct. (*See* Pl. Opp. 7-8). The crux of Plaintiffs' argument seems to be not only that § 208 is unconstitutional and therefore must be considered completely void (*see id.* at 6 (citing *Reynoldsville Casket Co.* v. *Hyde*, 514 U.S. 749, 760 (1995)), but also that the declaratory theory of law requires this Court to consider § 208 as if it had always been invalid (*see id.* at 7). Thus, the argument goes, Defendants cannot say that their conduct was lawful because § 208 was valid under *Abood*, because in the deeper, more metaphysical sense of the law, *Abood* and all laws authorized by it have *never* been valid. As support, Plaintiffs point to *Richardson* v. *United States*, 465 F.2d 844, 850 (3d Cir. 1972) (en banc), *rev'd on other grounds*, 418 U.S. 166 (1974), wherein the Third Circuit refused to allow the Government to rely on the Central Intelligence Agency Act for a defense when it was claimed that the Act was unconstitutional, writing that an unconstitutional law is "void and of no effect."

While the Court agrees with Plaintiffs that a defendant cannot simply argue that conduct was constitutional at the time in order to escape liability for unlawful conduct, that is not the issue before the Court. Instead, the Court is determining whether Defendants may assert the good-faith defense, a recognized affirmative defense in § 1983 actions. And there is no question that while a party cannot merely point to a void law as a basis for relief, *see*

24

*Reynoldsville*, 514 U.S. at 751, a party can still rely on "a previously existing, independent legal basis," *see id.* at 759. The good-faith defense is such an independent legal basis, *see Diamond*, 399 F. Supp. 3d at 396, and thus Plaintiffs' argument based on the "declaratory theory" must fail. Indeed, were the Court to find otherwise and adopt Plaintiffs' interpretation of the "declaratory theory," the Court would have to ignore Second Circuit precedent and find that there could never be a good-faith defense in § 1983 actions. It is not the Court's place to make such a finding, and so it will not.

### e. Plaintiffs' Effort to Recast Their Claims as Equitable Claims Fails

Although Plaintiffs do not clearly articulate it, the Court reads Plaintiffs' briefing as making an argument that they are entitled to a refund of their agency shop fees as a matter of equity, as opposed to law. (*See* Pl. Opp. 8 (arguing that Defendants took Plaintiffs' property based on an unconstitutional statute, and that both law and equity require that property's return)). Plaintiffs do not articulate how, if at all, an equitable claim would preclude Defendants' entitlement to the good-faith defense. However, insofar as the distinction between legal and equitable claims is relevant, Plaintiffs' claims clearly sound in law, not equity. As other district courts have noted, Plaintiffs seek a repayment of previously paid agency shop fees "not from particular funds or property in the [D]efendant[s]'[] possession, ... but from Union Defendants' general assets." *See, e.g., Diamond*, 399 F. Supp. 3d at 400-01 (internal quotation marks and citation omitted) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)). Indeed, as in the other district court

cases, *see, e.g.*, *id.* at 401 (collecting similar cases), Plaintiffs' core claim is that

Defendants PSC, FASCCC, and UPP either spent the collected agency shop fees

or forwarded them to the other Defendants (*see* Am. Compl. ¶¶ 3-5). "[W]here

the property sought to be recovered or its proceeds have been dissipated so

that no product remains, the plaintiff's claim is only that of a general creditor."

*Knudson*, 534 U.S. at 213-14 (internal quotation marks and brackets omitted).

Therefore, this Court joins other courts in finding that Plaintiffs' have

presented solely legal claims.

### f. Plaintiffs' Potential Entitlement to the Return of Property Does Not Foreclose a Good-Faith Defense

Plaintiffs claim that "wrongfully taken property must always be returned

when the statute relied on for taking the property is later declared

unconstitutional." (*See* Pl. Opp. 8). But Plaintiffs' proffered authorities do not

stand for such a broad proposition, and even if they did, they say nothing

about a good-faith defense in a § 1983 suit for monetary damages. *Harper* v.

*Virginia Department of Taxation*, 509 U.S. 86, 98-99 (1993), deals with whether

a court must apply a judicial decision retroactively; *Wyatt* v. *Cole*, 994 F.2d at

1115, held that defendants can, in fact, rely in good faith on a statute later

declared unconstitutional; *United States* v. *Lewis*, 478 F.2d 835, 836 (5th Cir.

1973), discusses whether a criminal defendant is entitled to a return of fines

paid pursuant to a guilty plea to a statute subsequently determined to be

unconstitutional; *United States* v. *Venneri*, 782 F. Supp. 1091, 1093 (D. Md.

1991), similarly addressed the return of restitution paid by a criminal

defendant on the basis of what was later found to be an unlawful (but not

unconstitutional) conviction; and *United States* v. *Rayburn House Office Building Room 2113*, 497 F.3d 654, 656 (D.C. Cir. 2007), mandated the return of documents seized in violation of the Speech or Debate Clause of the Constitution. These cases, whether taken separately or in the aggregate, do not speak to Plaintiffs' rule. Moreover, with the exception of *Wyatt*, each is easily distinguishable from the particular circumstances before the Court — Plaintiffs seeking a refund of money that was deducted pursuant to statutes drafted in full compliance with prevailing Supreme Court precedent. As observed by another district court, "in situations where the Supreme Court has reversed a prior ruling but not specified that the party before it is entitled to retrospective monetary relief, it seems unlikely that lower courts should even consider awarding retrospective monetary relief based on conduct the Court had previously authorized." *Bermudez* v. *Serv. Emps. Int'l Union, Local 521*, No. 18 Civ. 4312 (VC), 2019 WL 1615414, at *1 (N.D. Cal. Apr. 16, 2019). This Court agrees.

### g. Defendants' Are Entitled to the Good-Faith Defense as a Matter of Law

In the absence of other obstacles to the application of the good-faith defense, Plaintiffs argue that Defendants did not, in fact, act in good faith. (*See* Pl. Opp. 16). In support of this argument, Plaintiffs devote four pages of their briefing to detailing Defendants' alleged violations of *Chicago Teachers Union, Local No. 1, AFT, AFL-CIO* v. *Hudson*, 475 U.S. 292 (1986), and other cases by overcharging Plaintiffs. (*See id.* at 17-20). These claims are neither alleged in Plaintiffs' Amended Complaint, nor are they matters of which the Court may

take judicial notice. *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute."). Indeed, they are fundamentally different claims, and they fall far outside the "narrow universe of materials" the Court may consider on a Rule 12(b)(6) motion. *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Therefore, the Court will not consider those allegations.

Plaintiffs also argue Defendants could not have acted in good faith because they were "on notice" about *Abood*'s shaky foundations. (*See* Pl. Opp. 16). As a matter of Second Circuit precedent, this argument fails. *See Jarvis*, 660 F. App'x at 76 (finding defendants not liable for collection of agency shop fees "[b]ecause it was objectively reasonable for [defendant] 'to act on the basis of a statute not yet held invalid'" (quoting *Pinsky*, 79 F.3d at 313)). Moreover, as other district courts have noted, Plaintiffs' position would "imperil the rule of law," *see Cook*, 364 F. Supp. 3d at 1193, since it would lead to individuals disregarding Supreme Court precedent based on their personal divinations of what the law might become at some future date. As every other district court that has considered the issue has found, Defendants were entitled to rely on what was indisputably the law of the land at the time. *See, e.g.*, *Danielson* v. *Am. Fed'n of State, Cty., & Mun. Emps., Council 28, AFL-CIO*, 340 F. Supp. 3d 1083, 1086-87 (W.D. Wash. 2018). The good-faith defense does not require a defendant to be clairvoyant.

Moreover, the Court finds that Defendants have satisfied the requirements of the good-faith defense, even in the context of a Rule 12(b)(6)

motion.  As the Second Circuit has recognized, the good-faith defense provides that "private defendants … may be held liable for damages under § 1983 only if they … knew or should have known that the statute upon which they relied was unconstitutional."  *See Pinsky*, 79 F.3d at 311 (quoting *Wyatt*, 994 F.2d at 1118).  And as already mentioned, in the Second Circuit it is "objectively reasonable" to rely on a "statute not yet held invalid."  *See Jarvis*, 660 F. App'x at 76 (quoting *Pinsky*, 79 F.3d at 313).  There is no dispute that Defendants collected agency fees as authorized by N.Y. Civ. Serv. Law § 208(3) and in full compliance with then-binding Supreme Court precedent; nor have Plaintiffs shown, if the Court were to apply a subjective standard, that Defendants knew or should have known that § 208(3) was unconstitutional.  Therefore, the Court must find as a matter of law that Defendants acted in good faith and cannot be held liable for monetary damages under § 1983.

### h.    Plaintiffs Are Not Entitled to Discovery on Good Faith

As a final matter, Plaintiffs assert that it would be inappropriate for the Court to decide whether Defendants have asserted the good-faith defense without allowing Plaintiffs to take discovery first.  (*See* Pl. Opp. 20-21).  However, all the information the Court needs to make its finding appears on the face of the Amended Complaint.  As Plaintiffs acknowledge, it was not until *Janus* that the Supreme Court declared compulsory agency shop fees in the public sector to be unconstitutional.  (*See* Am. Compl. Introduction).  And as already discussed, it was objectively reasonable for Defendants to rely on a "statute not yet held invalid."  *See Jarvis*, 660 F. App'x at 76 (quoting *Pinsky*,

79 F.3d at 313).  Indeed, Justice Kennedy noted in *Wyatt* that "there is support in the common law for the proposition that a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable *as a matter of law*."  504 U.S. at 174 (Kennedy, J., concurring) (emphasis added).  Given the objective reasonableness of Defendants' reliance on controlling law at the time, there is no need for discovery into Defendants' state of mind at the time.  Dismissal is both appropriate and warranted.

### 3.    Plaintiffs Fail to State a Claim Under State Law

In addition to their federal claims under § 1983, Plaintiffs also bring state-law claims for conversion and unjust enrichment.  (*See* Am. Compl. ¶¶ 38-49).  Defendants raise numerous arguments, including that these state-law claims are precluded by N.Y. Civ. Serv. Law § 215.  (*See* Def. Br. 21).  Section 215 provides:

> Notwithstanding any other law to the contrary, any public employer, any employee organization, ... or any of their employees or agents, *shall not be liable for*, and *shall have a complete defense* to, any claims or actions under the laws of this state for requiring, deducting, receiving, or retaining agency shop fee deductions from public employees, and current or former public employees shall not have standing to pursue these claims or actions, if the fees were permitted or mandated at the time under the laws of this state then in force and paid, through payroll deduction or otherwise, prior to June [27, 2018].

N.Y. Civ. Serv. Law § 215(1) (McKinney 2019) (emphasis added).  The statute states expressly that it applies "to claims and actions pending or filed on or after June [27, 2018]."  *Id.* § 215(2).

Plaintiffs argue that § 215, despite its express language to the contrary, does not apply here. (*See* Pl. Opp. 21). Their theory is that N.Y. Civ. Serv. Law. § 208 was never "in force," since under the declaratory theory of law it was always void, and therefore the fees collected were not permitted under any law. (*See id.*). Although the Court appreciates that Plaintiffs may be correct about § 208's metaphysical status, that does not mean that § 208 was not, in reality, in force prior to *Janus*. For the purposes of the statute, § 208 was indeed in force prior to June 27, 2018.

Moreover, although Plaintiffs do not raise the issue in their briefing, it is clear that § 215 applies retroactively to Plaintiffs' state-law claims. Under New York law, "[a]mendments are presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated." *Matter of Gleason*, 96 N.Y.2d 117, 122 (2001) (citing *People* v. *Oliver*, 1 N.Y.2d 152, 157 (1956)). Additionally, "remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose." *Id.* (citing *Majewski* v. *Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998)). "Remedial statutes are those designed to correct imperfections in the prior law." N.Y. Stat. § 54(a), Comment (McKinney 2019).

Section 215 expressly provides for retroactive application by stating that it applies "to claims and actions pending or filed on or after" June 27, 2018, *see* N.Y. Civ. Serv. Law § 215(2), which includes actions filed prior to the statute's enactment in April 2019. Section 215 is also a remedial statute because it was designed to ensure that employee organizations, among others,

31

would remain free from liability for the previously lawful collection of agency shop fees now that *Janus* has made such conduct unlawful.  *Cf. Majewski*, 91 N.Y.2d at 584-85 (describing legislation as "remedial" when it was enacted to restore immunity to tort liability following a Court of Appeals decision).  Thus, there is no question that § 215 is retroactive legislation and applies to the matter at hand.

Nevertheless, Plaintiffs contend that § 215 is unconstitutional under both the United States and New York[7] constitutions.  Specifically, Plaintiffs allege that § 215 (i) violates the procedural and substantive due process protections provided by both constitutions; (ii) constitutes an unlawful taking in violation of the Fifth Amendment, as incorporated through the Fourteenth Amendment; and (iii) violates Article VII, § 6 of the New York State Constitution.  The Court will address each argument in turn.

### a. Section 215 Does Not Violate Plaintiffs' Procedural Due Process Rights

Both the federal and New York State constitutions provide that "[n]o person shall … be deprived of life, liberty or property, without due process of law."  U.S. Const. amend. V; N.Y. Const. Art. I, § 6 (McKinney, Westlaw through L. 2019, chapter 579).  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property'

---

[7]    The Court of Appeals, New York's highest court, reads New York's due process guarantee as largely coterminous with the due process guaranteed under the U.S. Constitution.  *See Am. Econ. Inst. Co.* v. *State*, 30 N.Y.3d 136, 157-58 (2017); *People* v. *David W.*, 95 N.Y.2d 130, 136 (2000).  Therefore, the Court will offer a merged analysis of the federal and state constitutional due process claims, as opposed to disaggregating them.

interests," *Mathews* v. *Eldridge*, 424 U.S. 319, 332 (1976), by requiring the Government to provide some sort of procedural protections when a deprivation occurs, *see Zinermon* v. *Burch*, 494 U.S. 113, 125-27 (1990). However, as the Supreme Court has recognized, "the State remains free to create substantive defenses or immunities for use in adjudication," *Logan* v. *Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982); *accord Stoianoff* v. *Commissioner of Motor Vehicles*, 107 F. Supp. 2d 439, 448 (S.D.N.Y. 2000), *aff'd sub nom. Stoianoff* v. *Commissioner of Department of Motor Vehicles*, 12 F. App'x 33 (2d Cir. 2001) (summary order), and when it does so, "the legislative determination provides all the process that is due," *Logan*, 455 U.S. at 433. Indeed, the Supreme Court held as much in *Martinez* v. *California*, where it recognized that even if California's immunity statute had deprived plaintiffs of a property interest, it had not done so without due process. *See* 444 U.S. 277, 281-83 (1980). Relevantly, the Court also wrote that "the State's interest in fashioning its own rules of tort law is paramount to any discernable federal interest, except perhaps an interest in protecting the individual from state action that is wholly arbitrary or irrational." *Id.* at 282.

Here, the New York legislature's determination to immunize those involved in the collection of agency shop fees from liability is all the process that Plaintiffs are due. Plaintiffs primarily rely on *Logan* (*see* Pl. Opp. 22-23), but as already noted, *Logan* cuts against Plaintiffs by reaffirming that the legislative process satisfies any procedural due process concerns, *see* 455 U.S. at 433. The Supreme Court's finding that the Constitution entitles the

claimant to "some form of hearing," *see Logan*, 455 U.S. at 433, is limited to when the State institutes "a procedural limitation on the claimant's ability to assert his rights," as opposed to altering "a substantive element of the … claim," s*ee id.* Moreover, insofar as solely federal constitutional claims are concerned, it cannot be argued that the New York legislature's action was "wholly arbitrary or irrational." The legislature wanted to protect those who had relied in good faith on § 208, a statute designed in full compliance with prevailing Supreme Court precedent at the time. The Court cannot regard such an objective or action as irrational. Section 215 comports fully with procedural due process.

### b. Section 215 Does Not Violate Plaintiffs' Substantive Due Process Rights

Whereas the procedural component of due process ensures that no deprivation occurs without adequate procedural safeguards, *see Zinermon*, 494 U.S. at 125-27, substantive due process "guard[s] the individual against 'the exercise of power without any reasonable justification in the service of a legitimate governmental objective,'" *Lombardi* v. *Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (quoting *County of Sacramento* v. *Lewis*, 523 U.S. 833, 846 (1998)). However, "[g]enerally speaking, state laws need only be rational and non-arbitrary in order to satisfy the right to substantive due process." *Gibson* v. *Am. Cyanamid Co.*, 760 F.3d 600, 614 (7th Cir. 2014). Indeed, as the New York Court of Appeals has noted, "the test of due process for retroactive legislation 'is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.'" *Am. Econ. Ins.*

*Co.* v. *State*, 30 N.Y.3d 136, 158 (2017).  As already noted, the Court does not view the legislature's decision to immunize those who lawfully collected agency shop fees prior to *Janus* as irrational.

Alternatively, retroactive legislation can run afoul of substantive due process if it impairs "vested or property rights."  *See All. of Am. Insurers* v. *Chu*, 77 N.Y.2d 573, 586 (1991); *cf. Davis*, 379 F. Supp. 3d at 252-53 (explaining that a plaintiff can show a substantive due process violation where there is a "valid property interest," or "property right," and an infringement of that right "in an arbitrary or irrational manner").  However, Plaintiffs currently have no property interest that the legislation can impair or infringe, as property rights in a cause of action do not vest until "a final unreviewable judgment" has been obtained.  *See Worldwide Directories, S.A. De C.V.* v. *Yahoo! Inc.*, No. 14 Civ. 7349 (AJN), 2016 WL 1298987, at *6 (S.D.N.Y. Mar. 31, 2016) (quoting *Ileto* v. *Glock, Inc.*, 565 F.3d 1126, 1141 (9th Cir. 2009)); *see also Hosp. Ass'n of N.Y. State, Inc.* v. *Tola*, 577 F.2d 790, 797 (2d Cir. 1978) (affirming district court's finding that "hospitals possessed no vested right in the judgment entitling it to protection under the Due Process Clause because it had not yet become final and unreviewable"); *Hodes* v. *Axelrod*, 70 N.Y.2d 364, 370 (1987) (explaining that "vested rights doctrine" protects a judgment from subsequent legislation "after [the judgment] becomes final").  Given the lack of any vested right or arbitrary behavior on the part of the legislature, the Court finds that § 215 also does not violate substantive due process.

### c.  Section 215 Does Not Violate the Takings Clause

The Fifth Amendment of the U.S. Constitution and Article I, § 7 of the New York State Constitution provide that private property shall not "be taken for public use, without just compensation."  U.S. Const. amend. V; N.Y. Const. Art. I, § 7.  As Plaintiffs note (*see* Pl. Opp. 24), the Takings Clause "prevents the Legislature (and other government actors) from depriving private persons of *vested* property rights," *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 266 (1994) (emphasis added).  Plaintiffs' argument, therefore fails for the same reason their substantive due process argument fails — they possess no vested property right, and thus nothing has been taken from them.  Section 215 does not run afoul of the Takings Clause.

### d.  Section 215 Does Not Violate Article VII, § 6 of the New York State Constitution

Plaintiffs' final argument for § 215's invalidity is that it violates Article VII, § 6 of the New York State Constitution, which provides that "[n]o provision shall be embraced in any appropriation bill ... unless it relates specifically to some particular appropriation in the bill."  Section 215 was enacted as part of the 2019 appropriation bill, *see generally* N.Y. Legis. 56 (McKinney 2019), and therefore must comport with Article VII, § 6.  The bar, however, is low.  In *Schuyler* v. *S. Mall Constructors*, 303 N.Y.S.2d 901, 903 (3d Dep't 1969), the court held that a provision in the appropriation bill to negotiate a contract for the construction of a public building at the Albany South Mall was in compliance with Article VII, § 6 because the bill appropriated money "for the construction of State buildings and other public improvements, including the

erection of the building in question." The court found that the provision "relate[d] specifically to some particular appropriation in the bill[] even though the 'particular appropriation' to which it relate[d] [was] not precisely itemized in the general appropriation bill." *Id.* at 904. Similarly, the Appellate Division upheld the creation of the Commission on Legislative, Judicial, and Executive Compensation via appropriation bill because the Commission's purpose — "to provide for periodic review of the compensation of state officers — relate[d] to items of appropriation in the budget." *Ctr. for Judicial Accountability, Inc.* v. *Cuomo*, 91 N.Y.S.3d 553, 559 (3d Dep't 2018). Reading these cases together, the common theme is that there must be a rational relationship between the challenged provision and a general item of appropriation in the budget; there is no need to tie the provision to a specific, itemized appropriation. Therefore, insofar as the budget appropriates funds for the compensation of public employees, the Court finds that § 215 relates to "some particular appropriation" in the budget because § 215 governs liability for those individuals and entities managing public employees' paychecks. Plaintiffs' final challenge to § 215 fails, and the Court thus finds that § 215 precludes all of Plaintiffs' state-law claims.

In sum, the Court joins the numerous other district courts that have heard substantially the same facts, claims, and arguments, in finding that Plaintiffs have failed to state any claim upon which relief may be granted. Moreover, Plaintiffs are not entitled to either injunctive relief or a declaratory

judgment because they lack standing to request such prospective relief. Accordingly, Defendants' motions to dismiss are granted in full.

## CONCLUSION

For the reasons set forth in this Opinion, Defendants' motion to dismiss is GRANTED and Plaintiffs' claims are DISMISSED WITH PREJUDICE. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:  January 3, 2020
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge